1154

No. 94,568

DANA LINN FLYNN, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(136 P.3d 909)

Opinion filed
June 9, 2006.

*William K. Rork*, of Topeka, argued the cause and was on the brief for the appellant.

*Christopher E. Biggs*, special prosecutor, argued the cause, and *Phill Kline*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Dana Flynn was convicted of first-degree premeditated murder, conspiracy to commit first-degree murder, and conspiracy to commit perjury in 1996. Flynn was convicted of murdering Randy Sheridan, who was shot to death on December 22, 1992, in rural Geary County. More detailed facts regarding Flynn's underlying convictions can be found in a companion case, *State v. Dreiling*, 274 Kan. 518, 54 P.3d 475 (2002). This court upheld her convictions on direct appeal in *State v. Flynn*, 274 Kan. 473, 55 P.3d 324 (2002). She filed a K.S.A. 60-1507 motion, claiming ineffective assistance of trial counsel, and now appeals the district court's denial of her motion.

In January or February 1993, prior to being charged with Randy Sheridan's murder, Flynn retained Brent Lonker from Wichita to represent her. Lonker represented her during an inquisition and the grand jury proceedings prior to the filing of charges. He appeared on Flynn's behalf at the preliminary hearing in April 1995 through June 1995. Lonker continued in his representation of Flynn at all pretrial motions and hearings and for a separate perjury charge. Three and one-half years after originally being retained, Lonker represented Flynn at trial where Flynn was convicted along with her brother, Mikel Dreiling. See *State v. Dreiling*, 274 Kan. 518. Flynn's pastor, Jerry Rollins, was also charged with Randy's murder but pled to a lesser charge. At Lonker's suggestion, Mikel Dreiling hired Lee McMaster from Wichita to represent him, and Jerry Rollins hired Dan Monnat to represent him. Lonker, McMaster, and Monnat worked cooperatively in preparing their cli-

ents' defenses. Lonker, McMaster, and Monnat agreed that the best defenses for their clients required the severance of Rollins' trial. As a result, Lonker filed a motion to sever. Lonker, McMaster, and Monnat reached an agreement with the State to sever Rollins' trial from Flynn's and Dreiling's trial.

Approximately 2 months before her trial began in August 1996, Flynn ran out of money to pay Lonker. With Flynn's approval, Lonker asked the court to appoint him as Flynn's counsel, and the district court granted his request. A jury convicted Flynn of first-degree premeditated murder; conspiracy to commit first-degree murder; and conspiracy to commit perjury after a 3 month trial. Flynn's brother, Mikel Dreiling, was convicted of first-degree premeditated murder; conspiracy to commit first-degree murder; conspiracy to commit perjury; and terroristic threat.

In 2003, Flynn filed a K.S.A. 60-1507 motion, alleging ineffective assistance of trial counsel. Following a 2-day evidentiary hearing, including testimony from multiple witnesses for both Flynn and the State, the district court issued a lengthy, detailed, and well-reasoned written memorandum decision denying Flynn's motion. Flynn appealed to the Court of Appeals, and we transferred the matter to this court on our own motion pursuant to K.S.A. 20-3018(c).

## ANALYSIS

Flynn claims that she should receive a new trial because she was denied the effective assistance of counsel during her trial. Flynn raises eight complaints to establish her claim that her trial counsel was ineffective. First, Flynn argues that Lonker was ineligible to try a first-degree murder case. Next, Flynn argues that Lonker prevented her from testifying and failed to inform her of her right to testify. Flynn also argues that Lonker failed to properly investigate the case, was not prepared for trial, failed to call witnesses on her behalf, and failed to introduce evidence that she thought was critical to her case. Flynn further argues that Lonker failed to conduct a poll to support a change in venue. Finally, Flynn asserts that Lonker unreasonably relied on codefendant's counsel, McMaster and Monnat, to investigate and litigate her case.

*Standard of Review*

Before we address Flynn's specific complaints about her trial counsel's performance, it is necessary to set forth our standard of review. Evaluating the effectiveness of a defendant's counsel requires the application of the two-part *Strickland* test. *Strickland v. Washington* 466 U.S. 668, 80 L. Ed. 2d 674,104 S. Ct. 2052 (1984). First a defendant must establish that his or her counsel's performance was less than that guaranteed by the Sixth Amendment to the United States Constitution. If the defendant can establish that the performance was deficient, the defendant must then demonstrate how the deficient performance prejudiced his or her defense. This two-prong test requires the defendant to show that his or her counsel's errors were so serious as to deprive him or her of a fair trial. *State v. Griffin*, 279 Kan. 634, 643, 112 P.3d 862 (2005); *State v. Gleason*, 277 Kan. 624, 643, 88 P.3d 218 (2004). Both the performance and prejudice prongs of the test are reviewed de novo as mixed questions of law and fact. An appellate court must determine whether the district court's findings are supported by substantial evidence and whether the conclusions of law are sufficiently based on the findings of fact. *Gleason*, 277 Kan. at 644.

Courts scrutinizing counsel's performance must be highly deferential. To fairly assess counsel's performance, a court must eliminate the distorting effects of hindsight and reconstruct the circumstances of counsel's challenged conduct. There is a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. The defendant must identify counsel's acts or omissions that fall outside the range of reasonable professional judgment. Strategic choices based on a thorough investigation of the law and facts are virtually unchallengeable. Strategic choices based on less than a complete investigation are reasonable to the extent that reasonable professional judgment supports the limitation on the investigation. 277 Kan. at 644.

Once a defendant has established that counsel's performance is deficient, he or she must then establish that his or her defense was prejudiced by the deficient performance. Prejudice can be established by showing that there is a reasonable probability that, but

for counsel's deficient performance, the result of the proceeding would have been different. A court must consider the totality of the evidence before the judge or jury in determining whether prejudice has been shown. 277 Kan. at 644.

*Ineligibility to try a murder case*

As alluded to by the district court, this is the only issue raised by Flynn requiring any detailed discussion. Flynn argues that the district court should not have appointed Lonker as her trial counsel because he was ineligible under K.A.R. 105-3-2 and unqualified because of his inexperience in trying severity level 1 felony cases. Flynn argues that Lonker's inexperience is demonstrated by his failure to maintain a written fee agreement; account for his time; file motions or orders for advance payment for expert witness fees, transcripts or documents; sequester witnesses; file memoranda in support of his motions; file motions in limine to exclude evidence; and timely file a notice of appeal.

The district court denied Flynn's claim, concluding that failure to comply with K.A.R. 105-3-2 does not establish ineffectiveness per se. The district court noted that Lonker was Flynn's retained counsel for at least 2 years prior to her trial for Randy Sheridan's murder. The district court also noted that Lonker had experience with a felony drug case, a class B felony trial for rape and kidnapping, extensive experience in medical malpractice, and some experience with personal injury and business litigation. Concluding that the appointing judge had waived any irregularity in Lonker's qualifications, the district court stated:

"The record is clear that the order appointing Lonker was done simply as a means to provide some payment. He indicated he would not have withdrawn. The failure to follow the regulation may have been a basis to void the appointment or disallow payment but is not the standard by which effectiveness of counsel is to be judged as defined by the Kansas Supreme Court."

The record supports the district court's factual findings. Flynn retained Lonker as her counsel in January or February 1993, based on the recommendation from another one of Flynn's attorneys. Lonker represented Flynn during an inquisition and the convening of a grand jury prior to the State filing the charges that led to her

convictions. Lonker appeared on Flynn's behalf at the preliminary hearing, which began in April 1995 and continued through June 1995. Lonker also represented Flynn in a separate perjury case.

After Lonker had represented Flynn for over 3 years, Flynn ran out of money to pay Lonker. Two months before Flynn's trial, Flynn and Lonker jointly requested that he be appointed as her counsel. Flynn did not raise any objections regarding Lonker's performance before the district court appointed him to represent her at trial.

Lonker graduated from law school in 1990. Although Lonker admitted that he had not tried 5 felony cases that would have been classified as severity level 1 or 2 felonies, Lonker testified that he had tried a felony drug case, a rape and kidnapping case, and a variety of low-level felonies and misdemeanors prior to the time Flynn retained him. Lonker also testified that he had civil trial experience, mainly in medical malpractice and also in personal injury and business litigation.

Flynn argues that Lonker was ineligible to represent her based on the 1996 amendment to K.A.R. 105-3-2 which provided in pertinent part:

"(a) Each licensed attorney engaged in private practice of law shall be eligible to serve on the panel if the following criteria are met:

. . . . .

(3) Each attorney assigned to the defense of any class A felony or any felony which is classified as an off-grid offense or a non-drug grid offense with a severity level of 1 or 2 shall have tried to a verdict, either as defense counsel or prosecutor, five or more jury trials involving the following:

(A) class A, B, or C felonies;

(B) non-drug offenses of severity levels 1 through 4 or drug grid offenses of severity levels 1 through 3; or

(C) any off-grid offenses.

. . . .

"(b) *Except for appointment of an attorney to provide representation for an indigent person accused of a capital felony or a homicide pursuant to K.S.A. 21-3401, 21-3402 or 21-3403*, the judge may waive any of the above conditions if the attorney selected by the judge has sufficient training, resources and experience to undertake the case in question." K.A.R. 105-3-2 (1997).

Prior to the 1996 amendment, K.A.R. 105-3-2 did not contain the italicized portion of (b) and authorized a judge to waive any of

the conditions for a homicide case if the attorney had sufficient training and experience to undertake the case in question. K.A.R. 105-3-2(b) (1994). The amendment to K.A.R. 105-3-2 became effective on November 1, 1996, several months after Lonker was appointed and just prior to the end of Flynn's 3-month trial. Nevertheless, Flynn argues that the amendment to K.A.R. 105-3-2 applied to Lonker when it became effective.

We find no merit in Flynn's argument that Lonker should have been replaced as her trial counsel when the amended regulation became effective near the end of her lengthy trial. No other attorney could have been prepared to replace Lonker at that point in the proceedings without causing a significant delay or prejudice to her defense. Clearly, appointing new counsel in the course of Flynn's lengthy trial could have in and of itself created a claim for ineffective assistance of counsel. See *Powell v. Alabama*, 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55 (1932) (finding ineffective assistance of counsel when an out-of-state attorney was appointed on the day of trial even though the attorney was unwilling to represent the defendants because he had not had an opportunity to prepare).

In the alternative, Flynn argues that Lonker did not have sufficient training and experience to undertake her case, so the district court could not have waived the requirements of K.A.R. 105-3-2(b) regardless of the 1996 amendment. This argument overlooks the fact that Flynn retained Lonker for over 3 years prior to his appointment. It also disregards the reason for Lonker's appointment, which was to ensure compensation for Lonker during the trial.

Flynn further argues that Lonker's inexperience is sufficient to establish ineffective assistance of counsel. Flynn relies on *State v. Spears*, No. 89,311, unpublished opinion filed October 31, 2003, for the proposition that a claim of ineffective assistance of counsel can be based on the attorney's disqualification under K.A.R. 105-3-2.

In *Spears*, the defendant's counsel requested a continuance 3 days prior to trial. At the hearing on the motion, the court recognized that Spears' appointed counsel did not meet the qualifications in K.A.R. 105-3-2 for representing Spears, who had been

charged with severity level 2 and 3 felonies. The district court appointed new counsel and granted the continuance, so Spears' new counsel could adequately prepare. On appeal, Spears claimed that his right to a speedy trial had been violated and argued that the continuance granted when his first attorney was replaced should be attributed to the State. The *Spears* court disagreed, holding that the continuance was properly charged to Spears because he had initially requested the continuance and had benefitted from the appointment of more qualified counsel.

Flynn quotes the following excerpt from *Spears* to support her argument:

"Most courts recognize that being represented by an inexperienced attorney does not per se constitute ineffective assistance of counsel. See, *e.g., Anderson v. Calderon*, 232 F.3d 1053, 1095-96 (9th Cir. 2000), *cert. denied* 534 U.S. 1036, 122 S. Ct. 580, 151 L. Ed. 2d 451 (2001) (inexperience of capital defense attorney not grounds for a per se ineffective assistance of counsel claim). However, the fact that [Spears' counsel] was not qualified pursuant to the regulations would have certainly supported any future claim Spears may have asserted based on ineffective assistance of counsel." Slip op. at 5.

However, this quote is dicta taken out of context. The *Spears* court did not hold that failure to qualify under the regulations constitutes ineffective assistance of counsel without considering the two-part test used to evaluate such claims. K.A.R. 105-3-2 does not short circuit the application of the two-part test or abolish the defendant's burden to identify specific acts or omissions that fall outside the range of reasonable professional judgment and demonstrate prejudice based on the deficient performance. See *Gleason*, 277 Kan. at 644.

Contrary to Flynn's argument, the United States Supreme Court has held that inexperience, in and of itself, does not establish a presumption that a defendant received ineffective assistance of counsel. Rather, a defendant must generally make a claim for ineffective assistance of counsel by pointing to specific errors which are evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. at 693-96; *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984).

In *Cronic*, the defendant was indicted for participating in a check kiting scheme after 4½ years of investigation. Cronic's retained counsel withdrew shortly before trial, and the court appointed another attorney 18 days before the trial was scheduled. Cronic's newly appointed attorney was a young attorney with a real estate practice who had never tried a criminal case. The trial court gave Cronic's counsel a 25-day continuance in which to prepare Cronic's defense. Cronic was convicted of 11 of the 13 counts on the indictment and sentenced to 25 years in prison. The Tenth Circuit Court of Appeals reversed his conviction, concluding that Cronic did not have the assistance of counsel as guaranteed by the Sixth Amendment. 466 U.S. at 650-53.

Noting that the Tenth Circuit did not support its conclusion by a determination that Cronic's counsel had committed any specific errors, the United States Supreme Court reversed the Tenth Circuit's decision. *Cronic*, 466 U.S. at 666-67. Regarding the young attorney's inexperience with criminal trials, the *Cronic* Court stated that "[t]he character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." 466 U.S. at 665.

We cannot presume that Flynn was denied the effective assistance of counsel based solely on Lonker's inexperience with trying upper level felonies. Rather, this court must evaluate Flynn's claim of specific errors using the *Strickland* test to determine whether she was denied the effective assistance of counsel. Thus, the district court's legal conclusion that there is no per se ineffectiveness based on Lonker's failure to qualify under K.A.R. 105-3-2 is correct.

Flynn asserts that Lonker demonstrated his incompetence by failing to execute a written fee agreement; account for his time; file motions or orders for advance payment of expert witness fees, transcripts or documents; sequester witnesses; file memoranda with motions; file motions in limine to exclude evidence; and file a timely notice of appeal. After reviewing the record, we find no support for Flynn's claim that Lonker was incompetent based on his inexperience. We are particularly persuaded by the fact that Flynn retained Lonker for over 3 years before his appointment and

that Lonker's appointment, without objection, did not occur until Flynn exhausted her personal funds.

We find no merit in Flynn's claim that she was denied the effective assistance of counsel because her attorney did not qualify under K.A.R. 105-3-2 and was inexperienced with trying level 1 felonies.

*Preventing Flynn from testifying and failing to inform her of her right to testify*

Flynn argues that she wanted to testify, and Lonker denied her the opportunity in violation of her rights. In a criminal case, the defendant has the right to make three key decisions:" " '(1) what plea to enter; (2) whether to waive jury trial; and (3) whether to testify in his [or her] own behalf.' " "*State v. Rivera*, 277 Kan. 109, 117, 83 P.3d 169 (2004) (quoting *Winter v. State*, 210 Kan. 597, Syl. ¶ 1, 502 P.2d 733 [1972]). However, defense counsel is responsible for strategical and tactical decisions like preparation, scheduling, and the type of defense. *Rivera*, 277 Kan. at 117.

Although Flynn testified that she did not know she had the right to testify, the district court did not find Flynn's testimony to be credible. On the contrary, the district court found that Flynn knew she had a right to testify and knowingly waived that right after consultation with Lonker. Based on this finding, the district court concluded that Lonker was not ineffective for recommending that Flynn not testify as a tactical decision. We do not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Mattox*, 280 Kan. 473, 480, 124 P.3d 6 (2005). There is substantial evidence in the record to support the district court's finding and its legal conclusion is sufficiently based on those factual findings. We agree with the district court that Flynn's claim of ineffective assistance of counsel because Lonker prevented her from testifying is without merit.

*Failure to investigate*

Flynn asserts that Lonker failed to properly investigate in preparation for her defense. Flynn asserts that Lonker should have investigated a list of witnesses that she wanted to testify. However,

none of these witnesses would have added to Flynn's defense. The district court noted that Flynn failed to proffer any other evidence that would have been discovered if Lonker had more thoroughly investigated. Consequently, the district court concluded that Flynn had failed to establish this claim for ineffective assistance of counsel. The district court's factual finding is substantially supported by the record, and its legal conclusion is sufficiently based on those facts.

*Lack of preparation for trial*

Flynn argues that Lonker was not adequately prepared for trial. Flynn raises the following seven complaints about Lonker's trial preparation:

1. Lonker did not provide her with copies of the transcripts from the grand jury, the inquisition, or the preliminary hearing.

2. Lonker only met with her for about an hour and a half to prepare for trial and failed to prepare her each day for upcoming witnesses.

3. Lonker refused to hire an investigator after he was appointed, citing a lack of funds.

4. Lonker refused to subpoena witnesses because of the cost and failed to inform her that it was unnecessary to advance fees for witnesses on her behalf.

5. Lonker promised to conduct a mock trial but failed to execute on his promise.

6. Lonker refused to spend his breaks preparing her for upcoming witnesses. Flynn testified that Lonker made phone calls for his cattle business rather than preparing for trial.

7. Lonker absented himself from the courtroom during the presentation of evidence on several occasions.

The evidence of Lonker's preparation is controverted with Flynn's testimony supporting her claims. Lonker's testimony, on the other hand, contradicts all of Flynn's claims. The district court noted Flynn's complaints, but found Lonker's testimony to be more credible, resolving the conflicting evidence in his favor. We have thoroughly reviewed the record and find that there is substantial evidence to support the district court's factual findings. We

agree with the district court's conclusion that Flynn failed in her burden to establish that Lonker neglected his duty to prepare her defense.

*Failure to call witnesses on Flynn's behalf*

Flynn complains that Lonker failed to call 12 key witnesses whose testimony would have changed the result of her trial. Trial counsel has the responsibility for making tactical and strategic decisions including the determination of which witnesses will testify. See *Rivera*, 277 Kan. at 117; *Ferguson v. State*, 276 Kan. 428, 449, 78 P.3d 40 (2003); KRPC 1.2(a) (2005 Kan. Ct. R. Annot. 365). Even though experienced attorneys might disagree on the best tactics or strategy, deliberate decisions based on strategy may not establish ineffective assistance of counsel. *Griffin*, 279 Kan. at 649.

The only evidence regarding the testimony of each of these 12 witnesses comes from Flynn's testimony at the 1507 hearing. Flynn's testimony regarding the testimony of 12 other witnesses is insufficient to apprise the court of the content and relevance of each witnesses' testimony. Flynn could not even identify all of the witnesses by name, generically referring to some prospective witnesses as neighbors who drove a similar vehicle, a KBI witness, and a doctor in Wichita.

After considering Flynn's evidence regarding these proposed witnesses, the district court concluded that Flynn's evidence is insufficient to support her claim of ineffective assistance of counsel based on Lonker's failure to call the witnesses she wanted. The district court's factual findings are substantially supported by the record, and its conclusions of law are sufficiently based upon those factual findings. We agree with the district court. Flynn has failed to establish any deficiency in Lonker's performance for failing to call these witnesses.

*Failure to introduce evidence*

Flynn complains that Lonker should have admitted a videotape that she created showing her at a car wash. Flynn intended the video to dispute another witness' testimony that Flynn had washed her car twice on the day of and following the murder. Flynn be-

lieves that the video contradicts the witness' version of the events. According to the witness, Flynn had to open her car door and reach up to put the money in the machine. The video depicts Flynn·at the car wash inserting coins in the machine without opening her car and reaching up.

The district court found that the video would have shown Flynn acting out part of a crime to dispute that she committed the act she was seen doing in the video. Accordingly, the district court concluded that Lonker would have been ineffective to admit the tape. This conclusion is based on the district court's findings, which are substantially supported in the evidence. We agree with the district court.

Flynn also argues that Lonker should have admitted the KBI report stating that there was no physical evidence found in Flynn's car. This argument lacks merit. Lonker called a forensic scientist employed by the KBI to testify that there was no clinical or physical evidence connecting Flynn's car with Sheridan's death.

*Failure to conduct a poll to change venue*

Flynn asserts that Lonker failed to conduct a poll to establish bias within the community in support of a motion to change venue. Rather than conduct a poll, Lonker chose a method often utilized in support of these types of motions and prepared an extensive, 25-page juror questionnaire, including questions about trial publicity. Lonker used the results of the questionnaire to seek a change in venue, but his motion was denied. The district court agreed with Lonker's tactical decision to use the juror questionnaire rather than another polling method and concluded that Flynn failed to establish any deficiency in Lonker's performance for using the questionnaire. We agree. Lonker was responsible for making tactical decisions, including the best way to poll jurors regarding publicity. See *Rivera*, 277 Kan. at 117; *Ferguson v. State*, 276 Kan. at 449; KRPC 1.2(a).

*Reliance on codefendants' counsel*

Flynn argues that Lonker was ineffective because he unreasonably relied on her codefendant's counsel for motions and objec-

tions. Lonker filed a Statement of Concurrence in Motions joining in 19 motions filed by Jerry Rollins' attorney, Dan Monnat. In addition, Lonker filed a concurrence in three other motions filed by Monnat on behalf of Rollins. Lonker also joined some of Lee McMaster's objections on behalf of Mikel Dreiling.

Flynn cites no authority for the proposition that codefendants' counsel cannot work together to defend their clients. To the contrary, the Kansas Rules of Professional Conduct encourage attorneys to associate with other attorneys when they believe it will enhance the representation. The Comment to KRPC 1.1 (2005 Kan. Ct. R. Annot. 356) of the Kansas Rules of Professional Conduct provides that "[c]ompetent representation can also be provided through the association of a lawyer of established competence in the field in question."

In response to Flynn's claim of ineffective assistance of counsel for relying on co-defendants' counsel, the district court concluded:

"There is no requirement that counsel expend additional time or funds to recreate motions already on file. Efficiency in representation does not equate with ineffectiveness[.] Lonker spent approximately 2100 hours on the case. The discovery in the case filled thirty or forty boxes which was gleaned to over fifty three inch [*sic*] ring binders for trial. Counsel read the discovery and the inquisition, grand jury, and preliminary hearing transcripts. Petitioner has failed to show that the cooperation of counsel resulted in ineffectiveness concerning her representation."

The district court's factual findings are substantially supported by the record, and we agree with its legal conclusion.

Flynn has failed to establish any deficiencies in Lonker's performance. As a result, we need not consider whether Lonker's performance prejudiced Flynn. We affirm the district court's denial of Flynn's K.S.A. 60-1507 motion.

Affirmed.