NOT DESIGNATED FOR PUBLICATION

No. 114,530

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL A. BROWN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed October 28, 2016.
Affirmed.

*John R. Kurth*, of Atchison, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

*Per Curiam*: A jury convicted Daniel A. Brown of rape and aggravated indecent liberties with a child. Brown filed a K.S.A. 60-1507 motion alleging ineffective assistance of counsel. The district court denied his motion. Brown appeals arguing his trial counsel, Rex Lane, was ineffective because Lane did not communicate with him and Lane failed to investigate possible defense witnesses. We affirm.

On November 3, 2010, a jury convicted Brown of rape and aggravated indecent liberties with a child in relation to two incidents involving Brown's 11-year-old stepdaughter, J.D. Our Supreme Court affirmed Brown's convictions in *State v. Brown*,

1

298 Kan. 1040, 318 P.3d 1005 (2014). A little less than a year later, on February 20, 2015, Brown filed a motion for post-conviction relief pursuant to K.S.A. 60-1507. In the petition, Brown argued that (1) his charges were multiplicious, (2) his sentence was unconstitutional, (3) the State should have charged him with incest, and (4) his trial counsel failed to provide effective assistance of counsel.

The district court held an evidentiary hearing on April 24, 2015. Brown abandoned his first three claims at the hearing. He only maintained his ineffective assistance of counsel claim against Lane.

Brown testified that during the 190 days he spent in jail from the time of his arrest to his conviction, he only met with Lane five times. According to Brown, the meetings lasted "10 to 15, maybe 20 minutes." The only meeting that lasted longer was their meeting on jury selection, which took about an hour. This meeting happened 2 days before the start of his trial.

Brown testified he gave Lane a list of witnesses he wanted Lane to subpoena, but Lane did not subpoena any of the witnesses. Brown told the district court the only explanation Lane offered was that the witnesses would lie for Brown. Brown said he filed a motion to dismiss Lane right after his preliminary hearing, but the court did not grant the motion. He never raised the issue again during his trial.

Lane testified he had met with Brown 13 times over the course of the case. He had kept records with the times and dates of all their meetings. The meetings varied in length from 12 minutes to 48 minutes. In addition, Lane spent time with Brown in the courtroom.

Lane verified that Brown had given him a list of people to contact. He testified that he spoke with several of the people on the list: Holly Martin on the phone for 18

2

minutes; Charles Stirton for 18 minutes; and Gary Boatright on two occasions. He also received a letter from Boatright

Brown told Lane there was information relevant to his defense on Facebook. Lane wrote the Facebook Corporation. Boatright eventually provided Lane with 57 pages of printouts of conversations from Brown's wife's Facebook page.

After speaking with Brown's proffered witnesses, Lane decided their testimony would not be beneficial to Brown's case. The case hinged primarily on the victim's credibility and forensic evidence. The witnesses, however, were not present when the incidents occurred. According to Lane, Brown's main defense was that his wife was setting him up, and his witnesses would mainly have provided testimony in support of this theory. Moreover, a couple of the witnesses were reluctant to testify. While Lane was not absolutely certain he had discussed this information with Brown, he was reasonably confident that he had.

Lane testified he gave Brown the opportunity to make all the decisions he was entitled to make, such as whether to testify. He went over potential jurors with Brown. Lane also went over the order of proceedings with Brown and was confident that Brown understood the procedure for trial.

After the evidentiary hearing, the district court denied Brown's K.S.A. 60-1507 motion. The court found that Lane had met with Brown 13 times and had interviewed witnesses at Brown's request. Brown had failed to demonstrate what his proposed witnesses would have testified to in his support. Therefore, Brown had failed to establish that Lane's performance was deficient and that his deficient performance prejudiced Brown. Brown appeals.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, this court must determine whether substantial competent evidence supports the district court's factual findings and whether those factual findings support the court's legal conclusions. This court applies a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish that (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014), *relying on Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984).

Brown alleges Lane rarely met with him, and when he did, the visits were only for short periods of time. Nevertheless, substantial competent evidence supports the district court's finding that Lane did communicate with Brown. At the evidentiary hearing, Lane testified he had kept records of the dates and times he met with Brown. According to those records, Lane had met with Brown 13 times with each meeting lasting from 12 to 48 minutes. The district court apparently found Lane's testimony more credible, and this court does not second guess such determinations. See *Shumway v. State*, 48 Kan. App. 2d 490, 496, 293 P.3d 772 (2013) (appellate court does not reweigh evidence or evaluate credibility of witnesses in reviewing denial of a 60-1507 motion).

Brown claims Lane failed to investigate proposed defense witnesses. Trial counsel is responsible for making tactical and strategic decisions including which witnesses will testify at trial. *Flynn v. State*, 281 Kan. 1154, 1165, 136 P.3d 909 (2006). If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually

4

unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland*, 466 U.S. at 690-91). The defendant bears the burden of showing counsel's alleged deficiencies were not the result of strategy. We must also strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014); *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

In *State v. Uwadia*, 47 Kan. App. 2d 829, 279 P.3d 731 (2012), the defendant brought an ineffective assistance of counsel claim, alleging his trial counsel did not investigate his proposed witnesses. The *Uwadia* court found the performance of the defendant's trial counsel did not fall below an objective standard of reasonableness. 47 Kan. App. 2d at 840. At an evidentiary hearing, the defendant's first appointed attorney testified she had her investigator speak to the suggested witness, and the investigator reported that they would not be helpful. The defendant's second appointed attorney then made the strategic decision not to call the witnesses.

As with the attorneys in *Uwadia*, Lane's performance was not deficient because he investigated Brown's proposed witnesses then made a strategic decision not to call them. Brown alleged that Lane did not investigate any possible defense witnesses. At the evidentiary hearing, however, Lane testified that he did speak with several witnesses. He even spoke with one possible witness on more than one occasion. Lane also investigated possible exculpatory evidence on Facebook. Only after following up on these leads did Lane determine that the witnesses did not have information beneficial to Brown's defense. Brown has not provided any evidence that Lane's decision was not strategic. Applying the proper presumption, Lane's performance did not fall below an objective standard of reasonableness.

Even if Brown were able to establish that Lane's performance was deficient, he would still need to show that the deficient performance prejudiced him. This requires a showing that "there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales*, 300 Kan. at 882. Based on the evidence presented at the evidentiary hearing and at trial, Brown has failed to show that there is a reasonable probability the trial would have ended differently if the other evidence had been presented.

In his written motion and at the evidentiary hearing, Brown alleged that Lane did not contact witnesses. He does not proffer what these witnesses would have testified to. Lane only briefly mentioned that the witnesses would have supported his theory that his wife at the time had set him up. He does not tell us how. Brown fails to demonstrate how Lane's alleged lack of communication affected his defense. See *Cheatham*, 296 Kan. at 435 (must tie lack of preparation to specific trial errors to demonstrate prejudice). Without any evidence of how the trial outcome would have been different but for Lane's performance, Brown has not meet his burden to show prejudice.

Additionally, the State presented a strong case against Brown. J.D. testified that on May 28, 2010, Brown and J.D.'s mother were outside drinking with some friends while she was sleeping in her room. At some point, Brown came into her bedroom, laid down on the bed next to her, and placed his hand on her right breast beneath her clothing. After Brown left for work the next morning, J.D. told her mother that Brown had come into her room during the night but did not provide any other details.

After returning home from work, Brown offered to take J.D. turkey calling, which she had been wanting to do for months. Brown drove J.D. to a secluded field approximately 5 minutes from their home. Brown then raped J.D. while he stood outside the passenger door of his truck and she laid across the front seat. J.D. testified she saw him rub something on his penis, then he began to have vaginal intercourse with her. J.D.

started yelling and trying to kick him, and he eventually stopped. In an earlier statement, J.D. said the encounter lasted approximately 30 minutes, but at trial she was not sure how long it took. Later that day, J.D. told her mother what happened, and her mother took her immediately to the hospital.

The doctor who examined J.D. testified J.D. had a pool of blood near the opening of her vagina as well as a hematoma next to her vaginal opening. She also may have had a small bruise on her upper inner left thigh. The doctor testified the hematoma could only have been caused by a penetrating-type injury and could not have been caused by a straddle-type injury.

The pediatric sexual assault examiner who prepared J.D.'s rape kit testified J.D. told her Brown had rubbed his saliva on her genitalia before penetrating her with his penis. In addition to the hematoma, J.D. also had small cuts on her genitalia. She also testified J.D.'s injuries were consistent with a violent sexual act, and they were also consistent with the J.D.'s story.

A forensic scientist from the Kansas Bureau of Investigation testified that she found blood and saliva but no semen on the underclothing J.D. was wearing at the time of the rape. DNA analysis showed the blood was consistent with J.D.'s known DNA profile. She also testified that the DNA analysis of penile swabs taken from Brown shortly after the rape was consistent with J.D.'s known DNA profile.

Brown also testified at trial. He claimed on Friday night he got drunk and slept alone in his truck. The next day, he took J.D. to the field to call turkey. According to Brown, they just drove around the field for 15 to 20 minutes before returning home. He suggested J.D. had made up the story because she was upset about Brown and J.D.'s mother getting divorced. He also suggested J.D.'s mother may have put her up to it.

Stirton, one of Brown's proposed witnesses, also testified at trial. He told the court that Brown and J.D.'s mother were having marital troubles at the time. Brown had told J.D.'s mother he wanted to move out, and J.D.'s mother had become very angry.

Given the strength of the evidence against Brown, there is not a reasonable probability that the outcome of the trial would have been different if Lane had subpoenaed more defense witnesses. Brown was in fact able to present his defense to the jury, and one witness supported this defense. Ultimately, the jury was not convinced by his theory and convicted him. Brown has not shown that other witnesses would have provided any other information. Lane's performance at trial was not deficient, and even if it was, Brown has not shown prejudice. Therefore, we affirm the district court's denial of Brown's K.S.A. 60-1507 motion.

Affirmed.