No. 117,362

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYAN RICHARD HARRIS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Issues not raised before the district court cannot be raised on appeal.

2.

Several Kansas cases have found the issue of a defendant's waiver of jury trial may constitute an exception to the general rule requiring preservation of the issue for appeal through contemporaneous objection.

3.

When the facts of the district court's determination to accept the waiver of jury trial are not disputed, the question is whether the defendant voluntarily and knowingly waived the right to a jury trial, which is a legal question subject to unlimited appellate review.

4.

The Sixth Amendment to the United States Constitution and Sections 5 and 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to a jury trial.

1

**5.**

Under K.S.A. 22-3403(1), with the consent of the court, a defendant and prosecuting attorney may submit a felony trial to the court rather than a jury.

**6.**

For a district court to accept a jury trial waiver, the defendant must be advised of his or her right to a jury trial and personally waive the right in writing or in open court on the record. A waiver must be voluntary and the defendant must understand what he or she is doing.

**7.**

Analysis of the voluntariness of a waiver depends on the particular facts and circumstances of the case.

**8.**

Kansas caselaw has upheld jury trial waivers even when the district court failed to explain all the particulars surrounding the right to a jury trial. Under the facts of this case, the defendant was appropriately advised of his right to a jury trial, and his waiver of his right to a jury trial was knowingly and voluntarily made.

**9.**

When the sufficiency of the evidence is challenged in a criminal case, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court must be convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.

**10.**

A criminal defendant has a statutory and constitutional right to be present with counsel at all critical stages of the prosecution of the case. Whether a defendant's right to

be present at a critical stage of the proceedings has been violated is a question of law subject to de novo review.

11.

Whether an error is structural or harmless is a question of law.

12.

The statutory right to be present at all critical stages of trial is codified in K.S.A. 2017 Supp. 22-3405(a), which states the defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law.

13.

The statutory right that a criminal defendant be present at any critical stage of the proceedings against him or her is analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the United States Constitution.

14.

Critical stages of the proceedings include any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue.

15.

The defendant has the right to be present only if his or her presence would contribute to the fairness of the procedure. A defendant does not have the right to be present if his or her presence would be useless or the benefit but a shadow.

3

16.

Under K.S.A. 22-3421, parties may poll the jury to ensure that the verdict is the jury's verdict. However, the same procedures are not necessary for a district court's findings because there are no jury members who may need an opportunity to express disagreement with or dissent from the verdict in open court.

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed May 11, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

PIERRON, J.:  The district court found Bryan Richard Harris guilty of possession of marijuana, second offense, after taking the matter under advisement following the bench trial. The court sentenced Harris to 24 months in the Kansas Department of Corrections. Harris timely appeals his conviction. We affirm.

On November 7, 2015, Atchison police officers arrested Harris based on a failure to appear warrant. Prior to arriving at the jail, officers requested that the corrections officers (COs) have the restraint chair ready. When officers drove into the jail's sally port, Harris was noticeably agitated. Although he was not violent toward the officers, he kicked a window in the police cruiser and had to be forcibly removed from the backseat. Two COs ushered Harris into intake. Although he walked on his own. Harris continued to be uncooperative and demanded to be placed in the restraint chair. By that point, the jacket he had been wearing had fallen off his shoulders and was hanging over his cuffed hands behind his back.

Harris refused to submit to a search. An officer uncuffed Harris and placed his jacket on the intake bench. CO Chris Contreras testified he thought CO David Stochlin had removed Harris' cuffs and set the jacket down, but CO Stochlin testified he was unsure who had handled the jacket. CO Stochlin conducted a pat down search of Harris' person and Harris got into the restraint chair. Officers then rolled him into a holding cell. Harris calmed down immediately and officers removed him from the restraint chair. After approximately 20 minutes, CO Stochlin found Harris' jacket on the filing cabinet behind the booking desk. CO Stochlin completed an inventory search of the jacket and found two small cigarillo smoking sticks in the right pocket. He believed the sticks contained marijuana due to the intense smell. CO Stochlin placed the cigarillos on a paper towel on the filing cabinet and notified CO Justin Harmon and CO Contreras.

At that time, CO Contreras was booking another inmate in the intake area and CO Harmon was nearby, though neither witnessed CO Stochlin search the jacket. CO Stochlin did not see who moved the jacket from the intake bench to the filing cabinet but assumed it had been an officer because of the jacket's location. The intake area is a secure area where only law enforcement or those with authorization by a CO are permitted. Officers keep inmate property behind the booking desk to keep it out of the reach of inmates.

CO Contreras took possession of the cigarillos and notified dispatch that a deputy was needed to process the evidence. CO Contreras met Deputy Greg Peterson in the sally port with the cigarillos on a paper towel. After conducting a field test on the cigarillos, he placed them in a baggie and sealed them in a paper sack. Peterson took the evidence back into the jail and met with Harris in the intake room. Officers had not informed Harris of his *Miranda* rights. Peterson showed Harris the cigarillos and asked if he knew those had been in his jacket pocket. Harris agreed that the jacket was his, but adamantly denied that the cigarillos were his. Harris told Peterson the police officers had searched him multiple

times so the cigarillos could not have been his. Peterson booked the cigarillos into evidence. The cigarillos were sent to the Kansas Bureau of Investigations (KBI) lab for testing. Brad Crow, forensic chemist for KBI, conducted the test on the substance from one of the cigarillos. The results were positive for THC.

On November 9, 2015, the State charged Harris with one count of felony possession of marijuana, second offense, and trafficking contraband in a correctional facility. The district court ordered a competency assessment for Harris to ensure he was competent to stand trial. On January 22, 2016, the court determined that Harris was competent to stand trial and the case could proceed. Harris stated that he wanted to proceed pro se and clarified for the record he did not consent to having standby counsel appointed.

On February 3, 2016, the district court heard Harris' preliminary hearing for this case, No. 2015CR276, at the conclusion of Harris' bench trial for case No. 2015CR275. The court again asked Harris if he wished to continue pro se. Although he denied the status of pro se, he stated that he was going to present the facts of the case himself. However, he filled out an application for appointed defense services, and the court appointed an attorney.

On March 28, 2016, at his arraignment, Harris entered a not guilty plea and requested the case be set for trial. When asked if he wanted a jury trial or bench trial, he responded, "Go with the judge. I want the bench." To clarify, Harris stated, "I want the judge to make a decision." Harris appeared to be somewhat confused in stating, "I don't want the Court to. I want the judge to." He was responding to the district court's question of whether he wanted the jury or judge to make the determination.

At the beginning of the bench trial, on May 25, 2016, appointed counsel, Michael Highland, said he was uncertain if Harris wanted him to remain on the case. We note that

6

Highland was the third attorney appointed in this case. The district court explained that Harris' options were to continue pro se with standby counsel or proceed with appointed counsel. Harris did not want any of those options but finally agreed to continue with counsel, though he expressed his frustration that Highland had not filed a pretrial motion Harris requested. Because Harris insisted on making the opening and closing statements himself, the court read from *In re Hawver*, 300 Kan. 1023, 1048, 339 P.3d 573 (2014), stating that Harris had the right to decide specific aspects of the case: what plea to enter, whether to waive a jury trial, and whether to testify. The court stated "defense counsel is responsible for strategical and tactical decisions like preparation, scheduling, and the type of defense."

As the conversation about the defense counsel's role in the trial continued, Harris said, "I chose a bench trial because it ain't going to be mostly about deciding what the law is, law and facts, something the jury don't get to do, as you're well aware of." He continued, "What I know and what I would like to believe is that I have a fair judge and someone who can decide the law fairly and that isn't going to allow the prosecutor to subvert the law in order to obtain . . . a criminal conviction against somebody who he claims broke the law." Shortly thereafter, Harris agreed that he was prepared to proceed.

The above facts were presented through testimony at the trial. At the end of the bench trial, the district court took the matter under advisement, informing the parties that it would issue a written decision within the next week. The court issued a memorandum decision the following day. The court found that after his arrest on November 7, 2015, an officer searched Harris' jacket and found marijuana in the pocket. Harris told one officer that the marijuana did not belong to him. Harris admitted the jacket was his; however, he had not been read his *Miranda* rights before being questioned. The court found Harris guilty of possession of marijuana, second offense, and not guilty of trafficking contraband in a correctional facility as the State had failed to show the requisite criminal intent.

7

On June 7, 2016, Harris filed a pro se motion to vacate or set aside, which the district court viewed as a motion for a new trial. Harris made several claims in his motion. The claims relevant to his appeal include: (1) Highland refused to file pretrial motions as he found no basis for filing a motion to suppress evidence because the State had a "slam dunk" case; (2) he was not present before the court when it issued the memorandum decision on May 26, 2016; (3) the court erred in finding him guilty of possession of marijuana; and (4) statements by Harris about owning the jacket should not have been considered because he was not Mirandized. At the motion hearing the court found that the State had presented sufficient evidence for a finding of guilty beyond a reasonable doubt for possession of marijuana and denied the motion for a new trial as being without merit.

On July 12, 2016, Harris filed a motion to reconsider. The district court addressed the motion prior to sentencing on August 8, 2016. Harris argued he had a right to be present at every stage of the proceedings and was unable to do so because the judge issued a memorandum decision rather than reading the verdict in open court. The court found the motion to be without merit and stated the rationale provided in the memorandum decision was sufficient.

During sentencing, Harris refused to participate in probation or mandatory drug treatment under SB 123. The district court subsequently sentenced him to 24 months in the Kansas Department of Corrections with 12 months of postrelease supervision to be served consecutive to the sentence already imposed in 2015CR275.

Harris appeals his conviction. He claims he did not properly waive his right to a jury trial, the State failed to produce sufficient evidence for his conviction, he was denied his right to be present at all stages of the proceedings, and the district court erred in denying his motion to vacate challenging his attorney's performance.

*Voluntary Waiver of Right to Jury Trial*

We first consider whether Harris knowingly and voluntarily waived his right to a jury trial.

Generally, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Several Kansas cases have found that the issue of a defendant's waiver of jury trial may constitute an exception to that general rule requiring preservation of the issue for appeal through contemporaneous objection. *State v. Chavez-Majors*, 54 Kan. App. 2d 543, 548, 402 P.3d 1168 (2017). When the facts of the district court's determination to accept the waiver of jury trial are not disputed, the question is whether the defendant voluntarily and knowingly waived the right to jury trial, which is a legal question subject to unlimited appellate review. *State v. Rizo*, 304 Kan. 974, 979, 377 P.3d 419 (2016) (citing *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 [2012]).

The Sixth Amendment to the United States Constitution and Sections 5 and 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to a jury trial. *Rizo*, 304 Kan. at 979-80. Under K.S.A. 22-3403(1), with the consent of the court, a defendant and prosecuting attorney may submit a felony trial to the court rather than a jury. For a district court to accept a jury trial waiver, the defendant must be advised of his right to a jury trial and personally waive the right in writing or in open court on the record. 304 Kan. at 980 (citing *State v. Irving*, 216 Kan. 588, 589-90, 533 P.2d 1225 [1975]). A waiver must be voluntary and the defendant must understand what he is doing. *Beaman*, 295 Kan. at 858. Analysis of the voluntariness of a waiver depends on the particular facts and circumstances of the case. 295 Kan. at 858.

Harris contends there is no evidence the district court sufficiently explained his right to a jury trial; therefore, the waiver could not have been knowingly made. Harris cites *State v. Frye*, 294 Kan. 364, 373, 277 P.3d 1091 (2012), and claims a waiver must be sufficient and made after the court has informed the defendant of the nature and extent of the jury trial. The *Frye* court cited to the requirements under *Irving* that the court must advise a defendant of his right to a jury trial and then the defendant must personally waive the right. *Frye*, 294 Kan. at 373 (citing *Irving*, 216 Kan. at 590.) Kansas appellate courts have upheld jury trial waivers even when district courts have failed to explain the particulars surrounding the right to a jury trial. *Rizo*, 304 Kan. at 981. The question here is whether the district court sufficiently advised Harris of his rights when both the court and defense counsel asked if he wanted the judge or a jury to make the determination.

The issue of Harris' right to a jury trial was addressed at the arraignment and bench trial. At his arraignment, Harris entered a not guilty plea, then his attorney asked if he wanted the trial before a judge or a jury. Harris replied, "Go with the judge. I want the bench." When the district court asked if he wanted a jury trial, Harris stated, "I'm asking for a bench trial." Harris stated that he did not want to waive "liabilities" and his attorney responded that it was up to him. As his attorney was asking if Harris wanted a judge or jury to make a determination, Harris spoke over him, saying, "I want the judge to make a decision. . . . I want the judge to. I don't want the Court to. I want the judge to." Harris asserts that by saying that he did not want to give up liabilities, he may have been expressing that he did not want to waive the right to jury trial. However, immediately after he made that statement, his attorney asked if he wanted the judge or the jury to make the determination, to which Harris stated multiple times that he wanted the judge. Harris brought up his choice of having a bench trial again at the beginning of the trial. He stated that he chose a bench trial because he believed the judge was fair and could prevent the prosecutor from subverting the law for a conviction.

Further, Harris' circumstances are unique because he had participated in a bench trial pro se in case No. 2015CR275 immediately before the preliminary hearing in this case. Given his insistence that the judge hear the trial and the fact he had defended himself in a bench trial during the pendency of this case, the particular facts and circumstances of this case show Harris had a sufficient understanding of the difference between a jury trial and bench trial. His waiver was knowingly and voluntarily made.

*Sufficiency of the Evidence*

We also must determine if there was sufficient evidence to support Harris' conviction for possession of marijuana.

When the sufficiency of the evidence is challenged in a criminal case, "[a]fter reviewing all the evidence in a light most favorable to the prosecution, the appellate court must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Kettler*, 299 Kan. 448, 466, 325 P.3d 1075 (2014). Circumstantial evidence is sufficient for conviction as long as it provides a reasonable basis from which the fact-finder may reasonably infer each element. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). "It is only in rare cases in which trial testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Ramirez*, 50 Kan. App. 2d 922, 936, 334 P.3d 324 (2014); see *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983); *State v. Naramore*, 25 Kan. App. 2d 302, 313, 965 P.2d 211 (1998).

Harris contends the State failed to present sufficient evidence to show that the marijuana was ever in his possession. He alleges the jacket was placed on the bench after the handcuffs were removed and was left unattended for approximately 20 minutes before CO Stochlin found it. By that point, somebody had moved it from the bench to the filing

11

cabinet. It is unclear who had access to the jacket because nobody knows who moved it. In that 20 minutes, Harris argues that another arrestee could have had access to the jacket and placed the marijuana in the pocket. Harris further points out that CO Contreras testified he was present when CO Stochlin searched the jacket and found nothing. CO Stochlin claimed he later found the marijuana in the pocket.

CO Stochlin and CO Contreras both testified they observed Harris wearing the jacket when he arrived at intake. They did not know who put the jacket on the intake bench, but whoever did also uncuffed Harris. They were uncertain of who moved the jacket to the filing cabinet, but only those authorized are permitted in the intake area. So, while the jacket was not continuously monitored, the intake area is a secure area, not open to the public. Entrants other than law enforcement personnel must get authorization from a CO. The filing cabinet where the jacket was located was behind the booking desk out of the reach of incoming arrestees.

Further, CO Contreras did not testify he observed CO Stochlin initially search the jacket and find nothing. He testified he was present in the intake area when CO Stochlin searched the jacket but he did not observe CO Stochlin find the marijuana because he was busy booking a new inmate. Although CO Contreras was in the same area, he was not paying attention to CO Stochlin at the time. Once CO Stochlin found the marijuana, he notified CO Contreras and CO Harmon, both of whom were in the intake area but were busy with other tasks. In viewing the evidence in a light most favorable to the prosecution, the evidence is sufficient that the marijuana was in Harris' possession when he entered intake wearing the jacket.

*Presence at Trial*

We must next determine if Harris was denied his constitutional right to be present at all critical stages of the trial.

A criminal defendant has a statutory and constitutional right to be present with counsel at all critical stages of the prosecution of the case against him. See *State v. Engelhardt*, 280 Kan. 113, 122, 119 P.3d 1148 (2005). Whether a defendant's right to be present at a critical stage of the proceedings has been violated is a question of law subject to de novo review. *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017). Whether an error is structural or harmless is also a question of law. *McDaniel*, 306 Kan. at 600.

The statutory right is codified in K.S.A. 2017 Supp. 22-3405(a), which states, "The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law." The statutory right is "analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings against him or her." *State v. Killings*, 301 Kan. 214, 241, 340 P.3d 1186 (2015) (quoting *Engelhardt*, 280 Kan. 113, Syl. ¶ 2).

Critical stages of the proceedings include "any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue." *McDaniel*, 306 Kan. at 601 (citing *Killings*, 301 Kan. at 241). In the latter scenario, the defendant has the right to be present only if his presence would contribute to the fairness of the procedure. 306 Kan. at 601. A defendant does not have the right to be present if his "presence would be useless, or the benefit but a shadow." 306 Kan. at 601 (quoting *Grayton v. Ercole*, 691 F.3d 165, 170 [2d Cir. 2012]).

Here, the district court conducted a bench trial on May 25, 2016, and took the matter under advisement. The following day, the court issued a memorandum decision outlining its rationale for finding Harris guilty of possession of marijuana and not guilty of trafficking contraband in a correctional facility. There was no hearing for the court's

13

determination. Harris contends the court violated his right to be present at all critical stages by issuing its determination via memorandum decision instead of pronouncing it from the bench. Harris contends the violation of his right to be present was unduly prejudicial because in the memorandum decision, the court wrote that the evidence showed that Harris admitted the jacket was his. It appears the court considered evidence that should not have been admissible. Had there been a hearing, Harris would have been able to clarify what evidence the court used in determining that the jacket was his.

K.S.A. 22-3421 governs the return of jury verdicts whereas K.S.A. 2017 Supp. 22-3424 governs the defendant's appearance for judgment. Under K.S.A. 22-3421, parties may poll the jury to ensure that the verdict is "the jury's verdict." However, the same procedures are not necessary for district court findings because there are no jury members who may need an "'opportunity to express disagreement with or dissent from the verdict in open court.'" *State v. Martin*, No. 104,465, 2012 WL 401605, at *5 (Kan. App. 2012) (unpublished opinion) (quoting *State v. Johnson*, 40 Kan. App. 2d 1059, 1077, 198 P.3d 769 [2008]). Under K.S.A. 2017 Supp. 22-3424(a), judgment must be rendered and sentence imposed in open court. Although the court must render a not guilty finding immediately, a guilty finding only requires that it be rendered "without unreasonable delay." K.S.A. 2017 Supp. 22-3424(b) and (c). Harris does not claim there was an unreasonable delay. The district court had no obligation to hold a separate hearing when the statutes permit the announcement of judgment to coincide with the sentencing. See *Martin*, 2012 WL 401605, at *5.

Harris had the right to be present at all critical stages of the criminal proceedings against him. A critical stage occurs when the defendant's presence is essential to a fair and just determination of a substantial issue. The return of a jury verdict is a critical stage because of the ability of the parties to poll a jury to ensure the unanimity of the verdict. However, while a guilty finding by a court must be rendered in open court, so long as there is no unreasonable delay, the findings may be rendered at sentencing. Therefore,

14

Harris' right to be present was not violated by the district court rendering its findings in a memorandum decision.

*Motion for a New Trial*

We next must determine whether the district court erred in denying Harris' motion for a new trial.

"The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." K.S.A. 2017 Supp. 22-3501. An appellate court reviews the district court's decision on a motion for a new trial for an abuse of discretion. *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016) A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). When a constitutional or statutory right is involved, the discretion of the district court is limited. Under those circumstances, there is a greater need for the trial court to articulate the reasons for any discretionary decision. *State v. Burns*, 44 Kan. App. 2d 289, 292, 238 P.3d 288 (2010).

Harris contends that even though he did not use the phrase "ineffective assistance of counsel" in his motion to vacate or set aside, he alluded to it. Therefore, he asserts the district court erred by failing to apply the *Strickland* standard before denying the motion. While the district court did not construe Harris' motion as a claim of ineffective assistance of counsel, it addressed Harris' concern about Highland not filing the motion to suppress at the beginning of the bench trial. The court stated:

> "This is *In re Hawver*, 300 Kan. 1023.
> "In a criminal case, the defendant has the right to decide specific aspects of the case, what plea to enter, whether to waive a jury trial, and whether to testify, citing *Flynn vs. State*, 281 Kan. 1154 at Page 1163.

15

"Beyond these matters, defense counsel is responsible for strategical and tactical decisions like preparation, scheduling, and the type of defense."

The court went on to say that defense counsel has the right to decide what motions to file and does not have to agree with a defendant. The court further stated that Harris would have to show justifiable dissatisfaction with his attorney for the court to consider replacing him. Harris stated that he did not wish to replace Highland and agreed that he was ready to proceed.

*Ineffective Assistance of Counsel*

On appeal Harris argues his motion for new trial contained a claim of ineffective assistance of counsel, so we examine that claim.

Harris claims that Highland's performance was deficient as he refused to file appropriate pretrial motions as he found no reason for doing so. Harris wanted Highland to file a motion to suppress his statement of ownership of the jacket because officers had not read him his *Miranda* rights. At the motion hearing on July 6, 2016, Harris stated that without his statement, the court could not have conclusively determined that the jacket was his. Harris contends that because the district court included his claim of ownership in its findings and never specifically stated that it did not rely on the statement in finding him guilty, the court must have considered the statement in making its final determination. Though Highland did not file a pretrial motion, in his closing argument, he argued that Harris was already in custody and had not been Mirandized when Peterson questioned him. He concluded that, as a result, the court should not have considered Harris' claim of ownership in its deliberation.

Harris contends Highland's representation was ineffective because he stated repeatedly that the State's case was a slam dunk. Harris also claims that Highland did not

have his best interest at heart because Highland continuously advised Harris to accept a plea. Further, Harris claims that Highland failed to object to the court issuing its determination in a memorandum decision rather than open court, which denied Harris' right to be present at a critical stage of the proceedings. We have determined that the district court did not violate Harris' right by issuing the memorandum decision, as there is no requirement for the findings to be rendered at a hearing separate from sentencing. Therefore, Highland's failure to object is not ineffective assistance, as no legal basis for an objection exists.

Under the Sixth Amendment to the United States Constitution, defendants have a right to effective counsel during all critical stages of criminal proceedings. *McDaniel*, 306 Kan. at 606. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established a two-pronged test that must be satisfied for a defendant to be entitled to relief on an ineffective assistance of counsel claim. First, a defendant must show that the attorney's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense to the extent that it deprived the defendant of a fair trial. 466 U.S. at 687. A defendant is not entitled to relief unless he makes both showings. 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Crowther v. State*, 45 Kan. App. 2d 559, 563-64, 249 P.3d 1214 (2011).

The first prong of the *Strickland* test requires a showing that counsel's errors were so serious that his performance was less than the Sixth Amendment guarantee. *Crowther*, 45 Kan. App. 2d at 564. When Harris addressed Highland's refusal to file a motion to suppress his statements before the trial, the district court cited to *In re Hawver*, in which the Kansas Supreme Court stated:

17

> "In a criminal case, a defendant has a right to decide specific aspects of the case, *i.e.*, what plea to enter, whether to waive a jury trial, and whether to testify. *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006). Beyond these matters, 'defense counsel is responsible for strategical and tactical decisions like preparation, scheduling, and the type of defense.' *Flynn*, 281 Kan. at 1163 (citing *State v. Rivera*, 277 Kan. 109, 117, 83 P.3d 169 [2004])." *In re Hawver*, 300 Kan. at 1048-49.

The State does not claim that any suppression motion would have been denied; however, it contends that Harris' statement was inconsequential. In considering effectiveness based on a failure to file a motion to suppress that likely would have been granted, this court must consider whether the evidence that would have been suppressed was significant enough that the district court would have reached a different conclusion. See *Crowther*, 45 Kan. App. 2d at 567-68.

The district court found that Harris had the jacket draped over his arms on top of his handcuffs upon entering the jail. The court also considered Harris' statement that the marijuana did not belong to him. However, in addressing Harris' statement about the jacket, the court wrote, "Evidence was presented that the Defendant admitted the jacket was his. However, this question was asked of the defendant after the marijuana was found without giving the Defendant his Miranda warnings." The legal explanation Highland provided for exclusion of the statement immediately followed Harris' incriminating statement.

Though the statement likely would have been suppressed had a motion been filed, Highland addressed the statement in his closing arguments. Filing a pretrial motion for suppression of evidence is more significant in a jury trial to prevent the jury from even knowing about the evidence. However, preventing the fact-finder from knowing about the suppressed evidence is less significant in a bench trial when the judge, the fact-finder, would have also made the suppression determination. Whether the argument to suppress

18

evidence was made pretrial or in closing arguments, the judge would have become privy to the same information.

Further, the district court's findings refer to the *Miranda* argument raised by Highland. It appears the court did not rely on Harris' statement in deciding Harris' guilt. The court found there was evidence that Harris wore the jacket into the jail as CO Contreras and CO Stochlin both testified to. Even if the court had considered Harris' statement in making its determination, there was sufficient evidence without the statement to conclude that the jacket belonged to Harris. Therefore, the statement was inconsequential to the court's determination.

Exclusion of the statement would not have affected the outcome of the trial. Highland's error was not so serious that his performance was less than the Sixth Amendment guarantee. Because Harris has failed to satisfy the first prong of the *Strickland* test, we do not need to consider the second prong. Harris' claim does not warrant an evidentiary hearing. The district court did not abuse its discretion by denying Harris' motion for a new trial.

Affirmed.