NOT DESIGNATED FOR PUBLICATION

No. 115,813

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANNY D. TRAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed July 28, 2017.
Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*:  In order for a movant to withdraw a guilty plea based on ineffective assistance of counsel, the movant must show that trial counsel's performance fell below the standard of reasonableness and, but for counsel's errors, the movant would have insisted on going to trial. *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014). Danny D. Tran was sentenced to 228 months in prison, but was granted probation for a term of 36 months. After his probation was revoked, Tran filed a motion to withdraw his guilty pleas. Tran alleged that his trial counsel was ineffective for failing to advise him that his confession was suppressible. The district court denied Tran's motion. Substantial

1

competent evidence supports the district court's dual findings that Tran's trial counsel was not ineffective and that Tran would have pled guilty even if he was aware of the suppression issue.

FACTUAL AND PROCEDURAL HISTORY

*Facts of the Case Underlying Tran's Motion to Withdraw Plea Based on Ineffective Assistance of Counsel*

In 2009, Tran pled guilty to aggravated robbery, kidnapping, aggravated burglary, and two counts of aggravated battery. He was 17 years old at the time of the events leading to his convictions, but was prosecuted as an adult. The factual basis for Tran's guilty plea was summarized by a panel of this court in *State v. Tran*, No. 110,475, 2014 WL 6676105 (Kan. App. 2014) (unpublished opinion).

> "Tran accompanied the other participants of the crimes into an occupied home in Sedgwick County, Kansas. Tran stated, '[M]y main objective was to go get the bag and put stuff in it and leave.' The group took items from the home, including DVD, video games, and a television. This occurred while someone in the group was armed with a deadly weapon. During the burglary, Tran and others forced one of the occupants to go from room to room and assist in collecting the property. During these events, the occupant was struck in the head with a handgun, causing him to bleed. When the group went outside the house one of the members shot at and struck a neighbor in the leg." 2014 WL 6676105, at *1.

At sentencing, the State asked the district court to grant a departure sentence based on the fact that Tran was the only juvenile involved in the crimes, he did not participate in the shooting, and because Tran "was essentially . . . the bag man, helped carry the property from the residence to the get-away vehicle." The district court sentenced Tran to 228 months in prison, but granted a dispositional departure to probation for a term of 36

2

months. In October 2010, about 1 year after sentencing, the court revoked Tran's probation and ordered him to serve the underlying sentence.

*Tran's First Trip to the Court of Appeals*

In March 2013, Tran filed a pro se motion to withdraw his guilty plea. He alleges that he did not knowingly plead guilty because his counsel was ineffective in failing to investigate and suppress his confession. Tran alleged that if he had known that his confession could be suppressed, he would have insisted on going to trial.

Tran gave the following version of the facts. After the home invasion, Tran and his codefendants were engaged in a high-speed car chase with law enforcement. The driver of the car stopped in a neighborhood and everyone tried to run away, but Tran was quickly arrested. An officer read Tran his *Miranda* rights. The police took him to City Hall for questioning around 1:50 a.m., although Tran said he did not want to talk to anyone. Tran said that "[o]ver the next few hours, different officers would come to the door of the interrogation room and ask [him] if he was ready to talk yet and each time he would state 'No'." He also alleges that around 7 a.m. he asked to use the bathroom and an officer told him that he could only use the bathroom if he told the officer what happened. At that time, Tran confessed. Tran says he confessed because he was tired (he had been up since 7 a.m. the previous morning), he had to use the bathroom, and he felt he had no choice than to give a statement. Before the confession, officers again reviewed Tran's *Miranda* rights with him. Tran initialed each line of the *Miranda* form. Tran says that he then asked for an attorney and "[t]he officer just gave [him] a glare like it pissed him off" and started the interrogation. When Tran was appointed counsel, he told his attorney about the interrogation. Tran alleges that his attorney told him that "there was no way to get it suppressed" and that he should "take a plea agreement if he wanted to out before he was an old man."

The district court held a brief preliminary hearing on Tran's motion at which the parties presented their arguments. The court construed Tran's motion as seeking relief under both K.S.A. 2012 Supp. 22-3210 and K.S.A. 60-1507. Both statutes have 1-year time limitations, but each also has an exception to the limitation. Under K.S.A. 2012 Supp. 22-3210, a claimant must show excusable neglect; under K.S.A. 60-1507, the claimant must show manifest injustice. The district court held that Tran failed to show excusable neglect or manifest injustice. Tran appealed.

The Court of Appeals noted that manifest injustice should be determined by a totality of the circumstances. The court quoted *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), for the following proposition:

> "'[C]ourts conducting a manifest injustice inquiry under K.S.A. 60-1507(f)(2) should consider a number of factors as a part of the totality of the circumstances analysis. This nonexhaustive list includes whether (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence.'" 2014 WL 6676105, at *3.

The court then applied the *Vontress* factors to Tran's motion. It held that Tran did not "demonstrate either a compelling reason preventing him from filing within the 1-year time limitation, or an actual innocence claim," but that his ineffective assistance of counsel claim may raise a substantial issue of law or fact. 2014 WL 6676105, at *3. The court concluded that "[b]ecause Tran asserted a claim in his pro se motion that, if true, could establish ineffective assistance of counsel, the district court erred when it failed to take the issue into consideration under the totality of the circumstances in evaluating Tran's claim of manifest injustice." 2014 WL 6676105, at *5. The Court of Appeals reversed and remanded the case to the district court for an evidentiary hearing. 2014 WL 6676105, at *5.

*Scope of Remand*

There was significant confusion over the scope of the district court's duties on remand. The district judge characterized the Court of Appeals decision as follows:

> "When this issue first came before the Court, the Court made a finding that the motion filed by Mr. Tran was untimely and denied it on that basis. That went up to the appellate courts. The appellate courts then noted in the appellate opinion the *Vontress* factors. Basically summarizing said that, well, the district court analyzed the first *Vontress* factor that it wasn't filed within a year and no reasons were stated as to why it couldn't have been filed in a year, but that the other two *Vontress* factors weren't considered, and there is no record for the appellate court to be able to consider the other two factors. So then there was a remand.
>
> So I guess I was operating under the presumption that the scope of the remand is to determine whether the other two *Vontress* factors are met, such that manifest injustice can be demonstrated such that we then, I suppose, get to a timely filing and then off we go. So—I mean, am I wrong about that scope?"

Basically, the district court thought that the point of the evidentiary hearing was to determine whether manifest injustice existed. Then, if the court determined that manifest injustice existed, it would initiate another inquiry into whether Tran's claims are meritorious.

The State's attorneys agreed with the district court's explanation of the scope of the remand. Tran's attorney did not. He did not think that the district court had to make separate findings on the *Vontress* factors and on the K.S.A. 60-1507 motion. He equated a finding of manifest injustice to "a finding that we've met our burden under the 1507 itself" because "we would basically be putting on the same evidence when we're trying to prove ineffective assistance of counsel." He thought that the Court of Appeals remanded the case for an evidentiary hearing on the *Vontress* factors because the record (which

5

consisted of Tran's affidavit) was insufficient to determine whether the merits of Tran's claim raised substantial issues of law or fact. One of the State's attorney's replied that he thought "the Court of Appeals overstepped its bounds by remanding this for an evidentiary hearing." He did not "think that *Vontress* requires an evidentiary hearing to review the second step." He thought the Court of Appeals should have remanded to the district court with instructions to apply the *Vontress* factors and that "forc[ing] an evidentiary hearing clouds this issue." The district court thought that Tran's argument regarding the scope of the remand was circular. The district judge stated, "[I]f I can't determine whether or not there's manifest injustice absent a trial of the defendant's claims, then the defendant gets a trial on his claims regardless of the time."

Despite the disagreement, the parties concluded that they had to do what they believed the Court of Appeals told them to do, which was to conduct an evidentiary hearing. But it is important to note that this appeal is premised on the belief that the purpose of the evidentiary hearing was to determine whether manifest injustice existed to permit the court to consider the substance of Tran's motion.

*Evidentiary Hearing on Tran's Motion*

Pursuant to the Court of Appeals' mandate, the district court conducted an evidentiary hearing. Tran recounted the facts of his arrest, interrogation, and confession as set out in his motion. Tran said that he told his trial counsel, Glen C. Robinson, about the interrogation. According to Tran, Robinson said "Did they threaten you or beat you? If not, then it was fine." This caused Tran to believe that there was no problem with the interrogation. Tran said that Robinson never discussed a possible motion to suppress with him. In fact, Tran had never heard of a motion to suppress until after his conviction. Tran said that if he had been aware of the possibility of suppressing his confession to the police he would have wanted to pursue a suppression motion and go to trial.

6

Tran acknowledged that he was arrested near the vehicle that fled the scene of the home invasion. He was also aware that some of his codefendants had confessed and that the State was prosecuting at least one codefendant who had not confessed. As part of the plea offer, the State asked Tran to testify against his codefendants. But, Tran said that he did not think that the State would make similar offers to his other codefendants.

Robinson also testified at the evidentiary hearing. The juvenile court appointed Robinson to represent Tran on a motion for adult prosecution. Robinson could not recall many details of the Tran case. Robinson had marked Tran's files for archiving, but the files had instead been destroyed. Robinson did not specifically remember reviewing the interrogation transcript or the incident report on Tran's case, but said that it was his habit and custom to review such things. When asked if he remembered discussing the suppression issue with Tran, Robinson answered, "Well, I guess I'd have to answer this way:  I examined all the issues that I thought were important in the defense of Mr. Tran and we discussed them. And that's the best explanation I can give you." Robinson also remembered that Tran's primary objective was to avoid prison. Robinson noted that even if he had secured a motion to suppress, the State still could have built a case against Tran without the confession.

The State's attorney gave Robinson some emails from July 2009 to refresh his recollection. Robinson then recalled that the plea negotiations were time sensitive because the State was engaging in plea negotiations with other codefendants. Robinson "believed that the other codefendants might be lining up to exonerate themselves by pointing the finger at Mr. Tran." He also recalled that he discussed the suppression issue with the State and his client. Robinson could not remember whether a transcript of the interrogation existed in August 7, 2009—the date on which Tran entered his plea. But, Robinson recalled listening to an audio recording of the interrogation.

At the conclusion of the evidentiary hearing, the district judge adjourned the proceedings for a couple of weeks. The judge took that time to review various exhibits introduced at the hearing. This included a transcript and audio recording of Tran's interrogation, transcripts of Tran's testimony at the preliminary hearings of his codefendants, a transcript of Tran's testimony at the trial of another codefendant, and email correspondence between Robinson and the State. These exhibits were not made a part of the record on appeal.

Before ruling, the district judge reiterated his belief that the Court of Appeals remanded the case for the district court to consider all of the *Vontress* factors and to determine, under the totality of the circumstances, whether manifest injustice existed to permit Tran's untimely filing. The district judge then reviewed the three nonexclusive *Vontress* factors. The first *Vontress* factor did not support a finding of manifest injustice because Tran did not provide a persuasive reason for failure to timely file his motion. The third *Vontress* factor did not apply because Tran was not making a claim of actual innocence. Then the district judge addressed the second *Vontress* factor—whether the merits of Tran's claim raised substantial issues of law and fact deserving of the district court's attention.

The district judge found significant issues with Tran's credibility and denied the motion on the basis that "manifest injustice has not been shown." The district judge provided a detailed analysis of his holding. He began by noting "that much of what Mr. Tran sets forth in his affidavit, which was cited by the Court of Appeals as a reason to remand this back to the trial court for evidentiary hearing, is inconsistent with the record that was produced in his underlying case." Tran's allegations were also inconsistent with his testimony at the preliminary hearings of one of his codefendants and his testimony at the jury trial of another codefendants.

8

Tran testified at the trial of Alex Louis, one of his codefendants. At the trial, Louis' counsel impeached Tran's testimony by pointing out that Tran only agreed to testify after he was offered a deal by the State. The inference that defense counsel was trying to draw was that Tran would say "whatever it is he needs to say in order to get probation." The State rehabilitated Tran's credibility by pointing out that Tran's trial testimony was consistent with the statements made during his interrogation. Thus, "the circumstances under which those statements were given were important material issues in the Alex Louis case." At Louis' trial, Tran testified that he voluntarily agreed to talk to police after they told him he could potentially be charged with attempted murder. This is inconsistent with Tran's allegation that he only confessed because the police wore him down and made him feel like he had no other choice but to confess.

The district judge also questioned Tran's credibility on the issue of whether he would have insisted on going to trial if he had known about the possibility of suppressing his confession. A preliminary hearing for one of his codefendants occurred only hours after Tran entered his guilty plea. At this preliminary hearing, Tran testified that he had read the police reports and was aware of what his codefendants had told the police about Tran's involvement in the home invasion. The judge also concurred with Robinson that, even if the confession had been suppressed, the State would still have a strong case. The evidence showed that Tran knew that the State had a strong case. So Tran's allegation that he would not have entered a guilty plea had he known about the potential for suppression was simply not believable.

Finally, the judge considered whether Robinson was ineffective for failing to pursue a suppression motion. The judge did not think that the interrogation provided "such a cut-and-dry case" that Robinson could predict how the district court would have ruled. The judge noted that Tran invoked his right to silence, but 3 minutes later, Tran changed his mind and decided to talk when the police told him he could be charged with attempted murder. By reading the email communications between Robinson and the

9

State, the judge was able to confirm that the plea offer was time sensitive as the State was engaging in the same negotiations with other codefendants. The judge concluded that Robinson was not ineffective for advising Tran that the plea offer was a good deal.

Based on his findings that Tran was not credible and that Robinson was not ineffective, the district court concluded by holding that "based on a totality of the circumstances, that manifest injustice has not been shown and that the motion should be denied."

Tran appealed.

ANALYSIS

The issues that the parties briefed for appeal relate to the K.S.A. 2016 Supp. 60-1507(f) manifest injustice standard. After the district court issued its opinion, the legislature amended K.S.A. 60-1507(f). L. 2016, ch. 58, sec. 2. The revised statute has essentially eliminated the second *Vontress* factor from the manifest injustice consideration. K.S.A. 2016 Supp. 60-1507(f)(2). Now, the manifest injustice inquiry is limited to determining why a movant failed to file the motion within the 1-year limitation or whether the movant presents a claim of actual innocence. K.S.A. 2016 Supp. 60-1507(f)(2). Tran's basis for arguing the existence of manifest injustice was based on the second *Vontress* factor—whether the merits of his claim raise substantial issues of law or fact deserving of the district court's consideration. The State argues that K.S.A. 2016 Supp. 60-1507(f)(2) should be retroactively applied to dismiss Tran's motion. Alternatively the State argues that Tran failed to show manifest injustice under the second *Vontress* factor. Tran argues that K.S.A. 2016 Supp. 60-1507(f)(2) should not be applied retroactively and that the district court erred in its application of the *Vontress* factors.

10

We do not need to determine whether K.S.A. 2016 Supp. 60-1507(f)(2) applies retroactively. In Tran's first appeal, a panel of this court determined that his motion did show manifest injustice warranting an exception to the 1-year time limit. The panel concluded that Tran showed manifest injustice because he "asserted a claim in his pro se motion that, if true, could establish ineffective assistance of counsel." *Tran*, 2014 WL 6676105, at *5. Based on this finding, the Court of Appeals panel held that "the district court erred in denying Tran's request for an evidentiary hearing to determine whether his counsel was ineffective." 2014 WL 6676105, at *5. Thus, the manifest injustice inquiry was final at that point and the parties should not have attempted to relitigate it at the district court. The only purpose of the remand was to conduct an evidentiary hearing on the merits of Tran's ineffective assistance of counsel claim in his K.S.A. 60-1507 motion.

To be fair, the Court of Appeals' opinion was not a model of clarity. One portion of the opinion states: "[W]e are unable to determine based on the existing record whether Tran's ineffective assistance of counsel claim raises a substantial issue of law or fact." 2014 WL 6676105, at *3. This could have caused the district judge and parties to believe that the record was insufficient to determine whether the second *Vontress* factor applied. However, right after that statement the court said: "As such, that claim must be remanded to the district court for an evidentiary hearing." *Tran*, 2014 WL 6676105, at *3. This shows that the panel intended to remand Tran's claim of ineffective assistance of counsel for an evidentiary hearing, not Tran's claim that manifest injustice exists. Later in the opinion, the court states that because "the record is devoid of evidence on the issue [of ineffective assistance of counsel] other than Tran's own affidavit, the record is insufficient to enable meaningful appellate review." 2014 WL 6676105, at *5. This may have caused the parties to believe that the record was insufficient to show manifest injustice. But, it seems that the court was implying that it could not engage in meaningful appellate review of whether Tran's counsel was in fact ineffective, not that it could not engage in meaningful review of the manifest injustice claim. This is supported by the following sentence, which says: "As such, the district court erred in denying Tran's

11

request for an evidentiary hearing to determine whether his counsel was ineffective." 2014 WL 6676105, at *5. This should have put the parties on notice that the scope of the remand was an evidentiary hearing on Tran's substantive claim of ineffective assistance of counsel.

Despite the confusion over the purpose of the evidentiary hearing, the district judge still made sufficient findings of fact and law regarding the merits of Tran's ineffective assistance of counsel claim to enable appellate review. In order to set aside his guilty plea, Tran had to show that Robinson's "performance fell below the standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, [Tran] would not have pled guilty and would have insisted on going to trial." *State v. White*, 289 Kan. 279, Syl. ¶ 4, 211 P.3d 805 (2009). The district judge made specific findings on whether Robinson's performance fell below the standard of reasonableness and whether Tran would have pled guilty but for the alleged errors. This court can review those findings to determine whether the district court's dismissal of Tran's motion was right for the wrong reasons. See *State v. Prine*, 297 Kan. 460, 481, 303 P.3d 662 (2013) (affirming district court as right for the wrong reasons).

While Tran's motion was labeled as a motion to withdraw a plea, it has been construed as a motion made under K.S.A. 60-1507. When a district court conducts an evidentiary hearing on a K.S.A. 60-1507 motion, this court employs a bifurcated standard of review. This court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

The district court began its analysis by noting that Tran's credibility was questionable. This court can "not pass on the credibility of witnesses or reweigh conflicting evidence." *Johnson v. State*, 42 Kan. App. 2d 1057, 1067, 221 P.3d 1147

12

(2009). Furthermore, the district court's credibility determination was premised on inconsistencies between Tran's motion and Tran's testimony at the preliminary hearings of two codefendants and the trial of another codefendant. The preliminary hearing and trial transcripts were not made a part of the record on appeal. An appellant "has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper." *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

The district court held that Robinson was not ineffective for failing to pursue a motion to suppress Tran's confession. After examining the interrogation, the district judge concluded that it was not so "cut-and-dry" that Robinson would have been able to predict with certainty whether a motion to suppress would have been granted. While Tran's motion alleged that he confessed because he felt like he had no other options, the judge found that Tran chose to confess after learning that he might be charged with attempted murder. Additionally, emails between Robinson and the State showed that the plea negotiations were time sensitive. Neither the emails nor the interrogation are part of the record on appeal, so this court must presume that the district court's findings were proper. See *Moncla*, 262 Kan. at 68.

"Strategic choices based on a thorough investigation of the law and facts are virtually unchallengeable. Strategic choices based on less than a complete investigation are reasonable to the extent that reasonable professional judgment supports the limitation on the investigation." *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006). Here, Robinson made a strategic choice. Even if Robinson did not make a full investigation into the suppression issue, reasonable professional judgment would support the limitation on his investigation because Robinson was working within the time constraints of the plea negotiations. Either Robinson could investigate and pursue a potentially unsuccessful motion to suppress or he could work out a very favorable plea agreement that would accomplish Tran's goal of avoiding prison. The uncertainty of successfully pursuing a

13

motion to suppress coupled with the time-sensitive nature of the plea negotiations support the district court's conclusion that Robinson was not ineffective.

The district court also held that Tran would not have insisted on going to trial if he had known about the suppression issue. Tran's testimony at his codefendants' hearings revealed that, at the time Tran entered his plea, Tran knew that the State had built a fairly strong case against him. Tran was arrested near the car that fled the scene of the home invasion. His codefendants had told the State about Tran's involvement in the home invasion. Again, the preliminary hearing and trial transcripts were not made a part of the record on appeal so this court must assume that the district court made proper findings. See *Moncla*, 262 Kan. at 68. A condition of Tran's plea agreement was that he would have to testify against his codefendants—it is reasonable to believe that the State was making a similar offer to others. This would have provided even more strength to the State's case. While Tran testified at the evidentiary hearing that he did not think that the State would ask his codefendants to testify against him, the district court found that Tran's credibility was questionable. In light of these facts, substantial competent evidence supported the district court's holding that Tran would not have insisted on going to trial if he had been fully informed of the suppression issue before he took his plea.

After the district court made its findings on the merits of Tran's claim, the court held that Tran failed to show manifest injustice. This was an unnecessary holding, as the manifest injustice issue had already been determined by the Court of Appeals. But, this court can affirm the district court's dismissal as right for the wrong reasons. As Tran's attorney noted at the evidentiary hearing, a finding that manifest injustice existed would be akin to a finding that Tran met his "burden under the 1507 itself" because the parties "would basically be putting on the same evidence when [they are] trying to prove ineffective assistance of counsel." The converse is also true. The district court found that manifest injustice did not exist because the evidence presented did not support a finding of ineffective assistance of counsel. Substantial competent evidence supports the district

14

court's findings that Robinson was not ineffective and that Tran would not have insisted on going to trial if he had known about the suppression issue. Accordingly, we affirm the district court's decision to deny Tran's motion.

Affirmed.