NOT DESIGNATED FOR PUBLICATION

No. 127,729

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY SHAWN CASEY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Submitted without oral argument. Opinion filed December 19, 2025. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: Jeffrey Shawn Casey, dissatisfied with the district court's denial of his K.S.A. 60-1507 motion on remand, timely appeals, claiming his trial counsel provided ineffective assistance. Our review finds no error by the district court, and we affirm.

1

The underlying facts of this case were set forth fully by other panels of our court in *State v. Casey* (*Casey I*), No. 109,172, 2014 WL 5610078 (Kan. App. 2014) (unpublished opinion), and *Casey v. State* (*Casey II*), No. 121,751, 2021 WL 69771 (Kan. App. 2021) (unpublished opinion). Relevant to this appeal, the victim, B.H., was sexually assaulted by an unknown assailant on August 3, 2005. DNA evidence was collected and sent to the Kansas Bureau of Investigation (KBI) in late August 2005; however, the DNA evidence was not analyzed until April 2010. A few months later, while running the profile through a national databank, the KBI found it was consistent with Casey's DNA sample. At trial, Casey maintained that he knew the victim, as he and B.H. had mutual friends. Casey claimed he ran into B.H. at the mall in the same general time frame the incident occurred and he gave her a hug when he saw her, which resulted in the transfer of his DNA onto B.H. One of Casey's friends testified and corroborated Casey's story.

A jury convicted Casey of rape, attempted rape, three counts of aggravated criminal sodomy, attempted aggravated sodomy, and aggravated sexual battery. The district court sentenced Casey to a controlling prison term of 312 months, running some sentences concurrent and others consecutive. Casey timely appealed, and another panel of our court affirmed Casey's convictions. *Casey I*, 2014 WL 5610078, at *1. A mandate was issued on August 3, 2015.

Casey timely filed a pro se K.S.A. 60-1507 motion alleging ineffective assistance of both trial and appellate counsel and raising a claim of insufficient evidence to support the jury's verdict. Casey maintained that he knew the victim and, because the victim claimed she did not know the attacker, he could not have committed the crimes. Relevant to this appeal, Casey alleged ineffective assistance of trial counsel for several reasons, including failure to investigate six witnesses who could have corroborated Casey's

testimony and failure to retain an expert witness in DNA analysis. The district court summarily dismissed Casey's motion, and Casey appealed.

The *Casey II* panel found the district court erred in summarily dismissing Casey's K.S.A. 60-1507 motion and reversed and remanded "for appointment of new counsel and direct[ed] that a preliminary hearing be conducted in this matter." 2021 WL 69771, at *1. Specifically, the *Casey II* panel explained it could not conclusively tell from the motion, files, and records of the case that Casey was not entitled to relief in his K.S.A. 60-1507 motion without knowing why trial counsel did not call the witnesses Casey wanted. 2021 WL 69771, at *6. The *Casey II* panel also explained it did "not know whether trial counsel's failure to present a DNA expert was reasonable strategy because counsel has never testified to explain why an expert witness was not called at trial." 2021 WL 69771, at *7. The panel reversed the district court's summary dismissal and remanded to the district court to hold a preliminary hearing on those two claims. 2021 WL 69771, at *7.

On remand, the district court appointed Casey counsel and held a hearing in which the parties agreed that, based on the remand instructions, an evidentiary hearing was appropriate. At the evidentiary hearing, Casey testified he had about four conversations with trial counsel before trial and asked trial counsel to investigate three witnesses—P.K., S.E., and J.K.—because "everything would've been completely different" had those individuals testified. P.K. was not named as one of the potential witnesses Casey listed in his K.S.A. 60-1507 motion, and the district court sustained an objection as to how P.K.'s testimony would have changed the outcome of Casey's trial. Casey provided contradictory testimony, first acknowledging his trial counsel may have contacted the three witnesses but did not investigate the witnesses to the extent Casey expected, then later testifying that trial counsel never got ahold of the witnesses. Casey explained:

> "I just feel like, you know, we were kind of going along with [trial counsel]'s, like, little
> story here for the trial but if the real story would've came out between [P.K.] and me and

3

everybody having threesomes and this and that and she's like well, it's a rape shield act, this and that. You can't bring up past, prior sexual. I mean that's what really in a nutshell happened in trial."

At the time of the hearing, Casey could not recall much about the DNA evidence other than that there was DNA evidence used at trial. In fact, Casey recalled trial counsel hiring Genetic Technologies Incorporated to examine biological evidence but, contrary to the argument in his K.S.A. 60-1507 motion, recalled the DNA expert "was our expert I thought."

The district court again denied Casey's K.S.A. 60-1507 motion.

ANALYSIS

Casey argues his trial counsel was ineffective in representing him for failing to elicit testimony from two witnesses—S.E. and J.K.—and for failing to call an expert DNA analyst in his defense. Casey asserts the district court erred in denying his K.S.A. 60-1507 motion and asks us to reverse the district court's denial and remand for a new trial.

*Standard of Review*

After an evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law on all issues presented. K.S.A. 2024 Supp. 60-1507(b); Supreme Court Rule 183(j) (2025 Kan. S. Ct. R. at 238). We then review the district court's findings of facts to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

4

*Trial Counsel Was Not Ineffective*

A district court must set aside a movant's conviction if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2024 Supp. 60-1507(b). The right to *effective* counsel is embodied in the Sixth Amendment to the United States Constitution and "plays a crucial role in the adversarial system." *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 (1985) (adopting *Strickland*). Ineffective assistance of counsel can be categorized into three subgroups, one of which is a claim that defense counsel's "performance was so deficient that the defendant was denied a fair trial." *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). That is, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> "To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

"[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. In other words, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Edgar v. State*, 294 Kan. 828, 830, 283 P.3d 152 (2012).

During appellate review, there is a strong presumption trial counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S.

5

at 689. The burden here is on Casey to establish "counsel's representation fell below an objective standard of reasonableness" viewed at the time of counsel's conduct. See 466 U.S. at 687-88, 690.

Counsel's strategic decisions made after a thorough investigation of the law and facts relevant to the realistically available options are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91. "Strategic choices based on less than a complete investigation are reasonable to the extent that reasonable professional judgment supports the limitation on the investigation." *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006). While some aspects of a criminal case remain with the accused—such as what plea to enter, whether to waive a jury trial, and whether to testify—other aspects of a criminal case—such as what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions—are left to the defense counsel. *Edgar*, 294 Kan. at 838. Again, Casey, who is claiming ineffective assistance of counsel, bears the burden to prove trial counsel's alleged deficiencies did not result from strategy. See *Sola-Morales*, 300 Kan. at 888. Simply invoking the word ""strategy"" does not protect "'the performance of a criminal defendant's lawyer from constitutional criticism.'" 300 Kan. at 887.

*Failure to call lay witnesses*

At the evidentiary hearing, trial counsel testified she met Casey far more than four times, as Casey suggested, and recalled having conversations with Casey before trial about certain witnesses Casey wanted to have testify on his behalf. The witnesses that Casey wanted to call did not specifically relate to Casey's prior contacts with the victim—a point Casey wanted to establish to prove the victim would have known if he was the attacker as the identity of the attacker was an issue in the case. Trial counsel could not recall if S.E. was, in fact, Casey's ex-girlfriend at the time of the incident but explained that, if she was, that would be a strategic reason not to call her as a witness in

Casey's defense. Trial counsel also could not recall if J.K. was the victim's significant other at the time of the incident but again testified that if J.K. was the victim's significant other, trial counsel would have no reason to call him to testify at trial. The trial transcript does, in fact, establish S.E. was Casey's girlfriend, or ex-girlfriend, around the time of the incident, and J.K. was the victim's significant other. Trial counsel explained she had called all the witnesses she believed were useful in the case and made a strategic decision not to focus on the victim's knowledge of the defendant—a reasonable decision based on the DNA evidence presented.

The district court found trial counsel's testimony more credible than Casey's, a finding we must accept. See *Khalil-Alsalaami*, 313 Kan. at 486-87 ("[A]ppellate courts do not "'reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.'""). The court's factual findings were derived from trial counsel's testimony and, therefore, supported by substantial competent evidence. See 313 Kan. at 486. Casey had the burden to establish that trial counsel's decision not to call these two witnesses was not reasonable trial strategy, a burden he did not meet. Even if we found trial counsel's strategic choices were based on less than a complete investigation, the choices were reasonable because trial counsel believed the testimony would not be beneficial and exercised her professional judgment by not calling Casey's ex-girlfriend and the victim's significant other as witnesses.

Even if trial counsel performed deficiently for failing to call S.E. and J.K. as witnesses, Casey failed to establish a reasonable probability the jury would have reached a different result absent the deficient performance. See *Sola-Morales*, 300 Kan. at 882. Casey failed to explain how the witnesses' testimony would have or could have helped his case. Rather, Casey made the conclusory contention without evidentiary support that "everything would've been completely different" had S.E. and J.K. testified.

Further, in Casey's brief on appeal, Casey simply suggests "there is a reasonable probability that had [S.E.] and [J.K.] been called, the outcome of Casey's trial would have been different." Casey waives and abandons any argument of prejudice from trial counsel's alleged deficient performance. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (point incidentally briefed and not adequately argued deemed waived or abandoned). We observe no error in the district court's decision to deny Casey's K.S.A. 60-1507 motion on this point.

*Failure to call a DNA expert witness*

Trial counsel also testified she retained a DNA expert but did not call the expert to testify at trial because she did not see it as being beneficial. Trial counsel acknowledged the DNA expert she hired provided her with useful information in preparing Casey's defense, but it was not information that required her to call the expert as a witness. Trial counsel explained the information she obtained from the DNA expert dealt with aspects of DNA and DNA testing. Trial counsel made a strategic decision not to retest the DNA—a reasonable strategy as Casey's defense relied in part on the State's failure to timely test or retest the DNA and alleged failures in handling evidence. Trial counsel deferred to the record when asked if she either cross-examined the KBI experts or if she argued in closing the State's failure to do additional testing.

At trial, the jury heard testimony from a SANE/SART nurse who performed B.H.'s sexual assault examination and collected evidence in the form of various body swabs. The record reflects trial counsel cross-examined the nurse and attacked the nurse's training and credibility as well as potential issues with the exam itself. Another staff nurse testified she drew Casey's blood for DNA testing to compare to the swabs taken from the victim.

8

The jury also heard testimony from two KBI forensic biologists trained in DNA analysis. The first forensic biologist testified she performed a forensic examination on the materials submitted in B.H.'s sexual assault examination kit. The forensic biologist explained she tested various swabs from the victim's body obtained by the SANE/SART nurse and did not detect any seminal fluid—evidence favorable to Casey. Trial counsel cross-examined this forensic biologist and questioned the DNA evidence presented as well as the lack of DNA testing of certain evidentiary items.

A second KBI forensic biologist and DNA analyst testified and explained what DNA evidence is and its different sources. The analyst explained to the jury how DNA is taken from certain items or body parts and compared to known samples to determine if they are consistent to each other. The analyst also explained that mere touch DNA—such as from the alleged hug Casey gave B.H.—would not leave much DNA behind, and any DNA that was left behind likely would not have stayed on the victim for long. Based on the evidence obtained from B.H.'s sexual assault examination kit, the analyst determined some swabs taken from B.H.—including a swab from her left chest, right neck, and left neck—all had a partial minor DNA profile consistent to Casey's. Trial counsel extensively cross-examined this analyst and even recalled the witness in Casey's defense. It was professionally reasonable for trial counsel to conclude her DNA expert would be cumulative to the testimony of the two KBI forensic analysts and would not add any new information for the jury to consider in Casey's defense.

The district court found that trial counsel consulted a DNA expert but made a strategic decision not to call the expert to testify as it would not have been beneficial to the case. The district court explained trial counsel testified she could get the same information from other sources based on what she learned from her DNA expert. While trial counsel did not explicitly state as much, the record is clear that trial counsel cross-examined the two KBI forensic biologists and even recalled one of the witnesses on

direct examination. The district court's factual findings were supported by substantial competent evidence as the findings closely mimicked trial counsel's testimony.

Again, even if trial counsel's performance was deficient for failing to call the expert DNA analyst counsel had retained to testify, Casey has failed to establish a reasonable probability the jury would have reached a different result with the testimony of Casey's DNA expert. See *Sola-Morales*, 300 Kan. at 882. Casey fails to explain how additional DNA testimony from an expert outside the KBI would have been helpful and merely asserts: "[T]here is a reasonable probability that had a DNA expert been called, the outcome of Casey's trial would have been different." Casey waives and abandons any argument of prejudice from trial counsel's alleged deficient performance. See *Meggerson*, 312 Kan. at 246 (point incidentally briefed and not adequately argued deemed waived or abandoned). The district court did not err in denying Casey's K.S.A. 60-1507 motion upon finding trial counsel's decision not to call the DNA expert she retained was reasonable.

Affirmed.