NOT DESIGNATED FOR PUBLICATION

No. 125,692

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

RONALD W. JAMES,
*Appellant.*

MEMORANDUM OPINION

Appeal from Wyandotte County District Court; WESLEY A. GRIFFIN, judge. Submitted without oral argument. Opinion filed November 22, 2023. Affirmed.

*Joseph A. Desch*, Law Office of Joseph A. Desch, of Topeka, for appellant.

*Kirstyn D. Malloy*, assistant district attorney, *Mark A. Dupree Sr*., district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., MALONE and WARNER, JJ.

PER CURIAM: Ronald W. James, an inmate, filed a K.S.A. 60-1507 motion alleging his trial counsel provided ineffective assistance of counsel on multiple grounds. After an evidentiary hearing, the district court procedurally dismissed multiple claims and denied relief on James' remaining claims. On appeal, James presents three primary reasons why he believes the district court erred in denying his K.S.A. 60-1507 motion. In his first two arguments, James claims the district court made procedural errors requiring reversal, but these arguments are unpersuasive. Any procedural error by the district court was harmless, as James' claims fail on their merits. James' third argument challenges the

1

district court's decision on the merits of his claim alleging his trial counsel was ineffective for advising him to waive his jury trial. We also find this argument lacking because substantial competent evidence supports the district court's findings, and the court did not err in applying its factual findings to its legal conclusions. We affirm the dismissal of James' K.S.A. 60-1507 motion.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of James' underlying criminal case are set out in *State v. James*, No. 110,146, 2014 WL 5312918, at *1-3 (Kan. App. 2014) (unpublished opinion). Generally, in September 2011, the State charged James with one count of rape of a child under 14 years of age. Throughout his criminal proceedings in Wyandotte County, James was represented by Jennifer Benedict and Gregory Vleisides.

James waived his right to a jury trial. At his bench trial, the State presented the testimony of the victim; the victim's mother; the forensic examiner who interviewed the young victim; the responding law enforcement officer; the social worker who interviewed the victim's mother; and the doctor who examined the victim. James testified in his own defense. Ultimately, the district court found James guilty of rape and sentenced him to 25 years' imprisonment.

James appealed, raising a number of challenges to his conviction and sentence. On direct appeal, a panel of this court vacated his sentence after finding it was ambiguous. 2014 WL 5312918, at *11. The panel also found the district court had failed to record any ruling on James' request for durational departure and the court was ordered to do so on remand. On remand for resentencing, the district court reimposed his sentence and denied James' request for a durational departure. James again appealed. This court affirmed the district court's sentence on the second appeal, and the Kansas Supreme Court denied

2

review on August 23, 2017. See *State v. James*, No. 115,324, 2016 WL 7429525, at *3-7, (Kan. App. 2016) (unpublished opinion).

Nearly one year later, on August 21, 2018, James timely filed a K.S.A. 60-1507 motion. James presented many claims in his pro se motion, some of which were difficult to decipher. The district court issued an order summarily dismissing all of James' claims, but reserved ruling on the allegations of ineffectiveness of trial counsel, pending the appointment of counsel and a hearing on those claims. The district court appointed counsel to represent James on the ineffectiveness claims.

Appointed counsel subsequently filed a "Memorandum in Support of Motion for Relief Pursuant to K.S.A. 60-1507" (2020 Memorandum). This memorandum alleged James' trial counsel was ineffective on four grounds: (1) trial counsel failed to advise James of the chances of acquittal in a jury trial versus a bench trail; (2) trial counsel failed to investigate the facts underlying the State's theory of the case; (3) trial counsel failed to retain a defense medical expert; and (4) trial counsel failed to present expert witness testimony to rebut the child victim's testimony.

In response, the State argued counsel's 2020 Memorandum improperly included two claims not presented in James' original K.S.A. 60-1507 motion—the claims related to expert testimony. As a result, the State maintained those claims were untimely because they did not relate back to the original motion. But for those claims timely filed, the State argued all should be summarily dismissed because they were unsupported by facts and James could not show he was prejudiced by any alleged ineffectiveness.

The district court held a bifurcated evidentiary hearing on the ineffectiveness claims. During the hearings, Benedict testified in her role as second chair trial defense counsel for James. Notably, she conceded she lacked experience in criminal defense so she "deferred" to her co-counsel's experience. And in response to James' ineffectiveness

3

claims, Benedict provided testimony regarding the factors and strategies defense counsel considered when they recommended James waive his right to a jury trial. First chair trial counsel, Vleisides, suffered a stroke in approximately 2015 that left him incapacitated, so he was unable to testify.

James testified in support of his claims. He also presented the expert testimony of Carl Cornwell, an attorney practicing criminal defense for 44 years, including in Wyandotte County. Of relevance to this appeal, Cornwell testified that he believed James' trial counsel were deficient. He believed their actions fell below the objective standard of reasonableness when defense counsel opened the door to prior bad acts testimony, and when they recommended James waive his right to a jury trial.

At the conclusion of the bifurcated hearing, the State requested a chance to provide a written closing, which would include findings of fact and conclusions of law, so that the State could obtain transcripts from all hearings, particularly because the State had different counsel at various stages of the matter. James' counsel did not object, and the district court agreed but did not expand on any briefing requirements. The State later filed its proposed findings of fact and conclusions of law, addressing each of the four ineffective assistance of counsel claims outlined in James' 2020 Memorandum. The State addressed the merits of all four claims, but also argued both of James' expert claims were untimely, as they were raised only in the 2020 Memorandum, which was outside the one-year limitations period. In response, James submitted his own proposed findings, but he addressed slightly different claims. His proposed findings did not discuss the alleged inadequate investigation by his trial counsel or the lack of retained experts.

The district court ultimately denied James' K.S.A 60-1507 motion in a written order. The court reasoned that James' 2020 Memorandum untimely raised new issues that did not relate back to his original motion. The district court also found James abandoned

4

two of his claims when his 2022 post-hearing briefing did not include certain arguments included in the 2020 Memorandum. The district court held:

> "Case law indicates that issues and arguments not raised or briefed are deemed abandoned. *State v. Boleyn*, 297 Kan. 610, 633, [303 P.3d 680 (2013)], repeats the rule that an issue not briefed by an appellant is deemed waived and abandoned. Thus, issues mentioned in the 2020 motion and not raised or supported in the 2022 Memorandum are abandoned. These include the following claims: inadequate investigation, the failure to retain a medical expert and the failure to retain an expert regarding the forensic interview procedure at the Sunflower House."

As for his remaining claims of ineffectiveness, the district court found James did not "provide sufficient facts or evidence that the performance of his attorneys [was] deficient." In this vein, the district court also found James did not "legally establish that [his trial counsels'] performance prejudiced his defense and, thus, deprived him of a fair trial."

James appeals the district court's decision.

DID THE DISTRICT COURT ERR IN DENYING JAMES' K.S.A. 60-1507 MOTION?

On appeal, James presents three arguments contending the district court erred when it denied his K.S.A. 60-1507 motion. First, he argues the district court erred in finding the issues raised in the 2020 Memorandum prepared by counsel were untimely. Second, James argues the district court erred in finding he waived certain arguments not contained in the post-hearing briefing. And third, he argues the district court erred in finding he did not show he received ineffective assistance of trial counsel on his claim regarding defense counsels' decision to recommend James waive his jury trial. The State submits a response to each argument but generally contends the district court properly denied James' K.S.A 60-1507 motion.

5

*Legal Principles Applicable to Review of a K.S.A. 60-1507 Motion*

To be entitled to relief under K.S.A. 60-1507, a movant must establish by a preponderance of the evidence: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2022 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2023 Kan. S. Ct. R. at 244) (preponderance burden).

Upon the filing of a K.S.A. 60-1507 motion, a district court has three options:

> "'"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing."' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

The standard we utilize as an appellate court when reviewing the district court's decision depends upon which of these options the district court used. 311 Kan. at 578. When, as happened here, a district court holds a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j). An appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law, though, is de novo. *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

6

*A. Any Procedural Errors by The District Court Were Harmless*

As noted, James raises three primary arguments on appeal—the first two relating to procedural aspects of his claims. But rather than address his three arguments consecutively, we first address the claimed procedural errors and then the merits of James' claims of ineffective assistance of counsel.

*1. Timeliness of 2020 Memorandum*

James begins by arguing the district court erred when it found the issues raised by his counsel in the 2020 Memorandum were not raised in James' original pro se petition and therefore were untimely. Comparing portions of his original motion with the claims made in counsel's 2020 Memorandum, James argues the district court was wrong "because [the 2020 claims] were not new claims, but a streamlined clarification of claims from a poorly drafted petition."

The district court's order suggests some issues were untimely based on its review of the State's July 10, 2020 Response to James' 2020 Memorandum:

> "The State properly raised the issue of new or additional habeas claims being brought outside the statute of limitations and that new claims would not relate back to the date of the original filing. [*Pabst v. State*], 287 Kan. 1[, 192 P.3d 630 (2008).] . . . It is clear that the claims raised by counsel [in 2020] were outside the time limitations for a habeas motion—the mandate in the direct appeal was filed in 2017, the pro se petition was timely filed in 2018, all additional claims were filed more than 1 year after the mandate. See Supreme Court Rule 183(c)(4)."

The district court went on to correctly outline that *Pabst* provides the legal authority for refusing to address new K.S.A. 60-1507 claims that do not relate back to the original motion. See *Pabst v. State*, 287 Kan. 1, 25, 192 P.3d 630 (2008) ("[T]he district

7

court was unquestionably correct in finding no relation-back for the claims set forth in . . . the amended motion, because they are based on different grounds than asserted in the original motion.").

Unfortunately, the district court's order was not entirely clear regarding which of James' claims were dismissed as untimely. But focusing on James' 2020 Memorandum, we find the four claims stated in that document to be entirely consistent with his original pro se motion. Each of his counsel's 2020 arguments were presented in his original 2018 motion, so any ruling by the district court contrary to that would be erroneous. However, we need not belabor this in any further detail, because any error by the district court is harmless as it does not impede our review of James' claims. See *State v. Wilson*, 308 Kan. 516, 527, 421 P.3d 742 (2018) (finding remand for failure to comply with Rule 183[j] was unnecessary where it did not impede review of the issue). Both James' original motion and his 2020 Memorandum are contained in the record. And, as discussed below, each of the claims found in James' 2020 Memorandum was ultimately reviewed by the district court on the merits.

### 2. *James' 2022 Findings of Fact and Conclusions of Law*

In response to James' argument regarding the timeliness of his claims contained in the 2020 Memorandum, the State contends James mischaracterizes the district court's holding. Instead, the State argues the district court "declined to reach the final three issues [contained in the 2020 filing] because James raised them in the March 2020 Memorandum but not in the [2022] proposed findings of fact" following the evidentiary hearings. And James' second argument is focused here, as he contends the district court erred by finding he waived certain arguments not contained in his 2022 post-hearing briefing.

It is true that, in its decision, the district court "noted that issues and arguments discussed in the Plaintiff's 2020 motion differ from those in the 2022 filing and the pro se petition." Based on these differences, the district court found James was "proceeding [only on] the claims in the 2022 document as it is the superseding document and the 2022 document does not ask the Court to consider issues in the prior motions." Relying on a long-established appellate rule, the district court found "issues mentioned in the 2020 motion and not raised or supported in the 2022 Memorandum are abandoned." See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (stating that an "issue not briefed by an appellant is deemed waived and abandoned"). Such waiver included James' 2020 claims that his trial counsel was ineffective based on inadequate investigation, failure to obtain a medical expert, and the failure to retain an expert regarding child interviewing procedures.

James now insists the district court erred in dismissing these claims based on waiver because his 2022 post-hearing pleading "was never required, or intended to be, a comprehensive briefing of all issues/claims." He argues that despite the document being titled: "Plaintiff's Proposed Findings of Fact and Conclusions of Law," the filing "was by no means a final statement of issues to be resolved with arguments on every issue." And because he did not unequivocally waive these issues, the district court committed reversible error when it relied on an inapplicable appellate court rule in *Boleyn* to support its decision.

The State agues panels of this court have deemed issues abandoned when "asserted in K.S.A. 60-1507 motions but not later addressed." Alternatively, the State reasons that even if the district court erred in finding James abandoned these issues, the issues fail on their merits.

This alternative argument by the State is where the rubber meets the road. As with the timeliness issue, it is likewise unnecessary for us to decide James' claims based on

9

any purported waiver of issues not argued in his post-hearing brief. Ultimately, given the completeness of the record before us, any procedural error by the district court was harmless because our review is not hampered by such error. See *Wilson*, 308 Kan. at 527 (our review is not impeded). The record includes James' original motion, his 2020 Memorandum, the parties' 2022 post-hearing briefs, and all related documents, which puts us in the same position as the district court to examine James' claims.

Because any procedural error was harmless, it is unnecessary for us to conclude procedural error occurred. Rather, we choose to address James' claims of ineffective assistance of trial counsel on their merits.

## B. *James' Ineffectiveness of Counsel Claims Fail on the Merits*

As James' appellate counsel notes, his 2020 Memorandum "streamlined" his pro se arguments into four claims, all related to the alleged ineffectiveness of his trial counsel. We review each claim in turn, but first outline the relevant legal standards.

### *Legal Principles Applicable to Ineffective Assistance of Counsel Claims*

This court analyzes claims of ineffective assistance of counsel under the well-established two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and adopted by our Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). *Khalil-Alsalaami v. State*, 313 Kan. 472, 485, 486 P.3d 1216 (2021). To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) that the deficient performance prejudiced the defendant. 313 Kan. at 526.

To demonstrate deficient performance under the first prong, "'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" 313 Kan. at 485 (quoting *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015). A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Khalil-Alsalaami*, 313 Kan. at 486. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, counsel's action "'might be considered sound trial strategy.'" 313 Kan. at 486 (quoting *Strickland*, 466 U.S. at 689). "An attorney's strategic decisions are essentially not challengeable if the attorney made an informed decision based on a thorough investigation of the facts and the applicable law." *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014).

The second prong of the *Strickland* analysis requires the defendant to establish that defense counsel's deficient performance was prejudicial. "'"To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" *Sprague*, 303 Kan. at 426. "'"A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."'" *Khalil-Alsalaami*, 313 Kan. at 486 (quoting *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 [2012]).

These standards apply to all of James' ineffective assistance claims, which we now address individually. But we are obligated to note that James only argues the merits of his first issue—counsel's advice about his waiver of jury trial—and spends the remainder of

11

his appellate briefing explaining why his other arguments should not have been procedurally dismissed by the district court. Generally, arguments not presented on appeal are considered waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). But here, because we can conclude on our review of the record that his arguments before the district court lacked merit, even ignoring the procedural concerns, we address each one.

1. *James Fails to Demonstrate Trial Counsel Improperly Advised James Regarding His Waiver of a Jury Trial*

In its decision on this issue, the district court compared James' three filings and found "[a]rguments adding new aspects to [the original] claim do not relate back to the date of the filing of the pro se petition" under *Pabst*. The district court explained that James' original petition claimed his trial counsel "coach[ed]" him to give up his jury trial right, then his 2020 Memorandum shifted to argue "a trial to the court should never occur in this jurisdiction in this type of case." Later, in the 2022 post-hearing brief, current counsel outlines reasons why trial counsel's rationale for recommending a bench trial was incorrect. But after analyzing James' claim as a whole, the district court found James neither established his trial counsel's representation was deficient nor did he show he was prejudiced by the alleged deficient representation.

We also examine James' claims of ineffectiveness as it relates to the entirety of his trial counsel's advice to waive his right to a jury trial. During the evidentiary hearing, James' counsel noted this was the "main thrust" of his argument—that James was improperly advised on waiving a jury trial. To succeed on his claim, as recited above, James must sufficiently demonstrate both prongs of the *Strickland* analysis to prove his trial attorneys were ineffective.

12

Because we find James did not demonstrate prejudice resulting from his trial attorneys' alleged deficiencies, it is not necessary to find their representation was also deficient. Even so, an important piece undermining his deficiency argument is that the evidence presented at the hearing was, quite simply, condensed to the competing opinions of the testifying attorneys.

Benedict testified that during her representation of James, she discussed the trial options with her co-counsel, Vleisides, together with James' wife. Because of Benedict's lack of experience in the area, she admittedly "deferred" to co-counsel's guidance. On cross-examination, Benedict testified that while Vleisides was "the old hand at this" or the "primary lead," she still discussed strategy with him. To her knowledge, Vleisides had experience in representing defendants accused of sex crimes, and this was not the first sex crimes case he had tried. And Benedict testified she was aware of the reasoning behind the strategy in suggesting a bench trial and she discussed the benefits and drawbacks of a bench trial with her co-counsel.

Similarly, Benedict testified that she and Vleisides talked with other lawyers with whom they regularly consulted. Benedict identified three attorneys they consulted during their representation; two of which had experience in the area, and one that "directed [them] to the experts [they] talked to."

Benedict also identified the factors they believed "played better before a judge than would play before a jury." These factors included James' appearance, his prior bad acts, that the victim was a sympathetic "beautiful little five-year-old girl," and an unsupported claim that the victim's "mother and boyfriend had some ulterior motive to get back at Mr. James." Benedict testified the presence of the victim, combined with the lack of supporting witnesses, created a concern for the emotions of a jury.

Notably, Benedict testified the decision of whether to recommend waiver did not occur "until a little ways into the case" because counsel ran into a "dead end as far as evidentiary stuff and experts and what not. And so then it became a much more important issue because we wouldn't have any of the things that might help persuade a jury as opposed to a judge."

At the hearing, James' only evidence aside from his testimony to support his argument was the testimony of attorney Cornwell. James presented Cornwell as an experienced attorney in the area of child molestation cases who believed this case should have been tried to a jury. When questioned about what he thought regarding trial defense counsel's decision to advise James to waive his jury trial, Cornwell testified, "Well, based upon what I read and probably mostly based upon 44-years of trying somewhere between 250 to 300 felony jury trials, I thought that was a bad decision." Cornwell reasoned that he believed the case should not have "gone to Judge Griffin" and Wyandotte County "is the best county in the world to try a jury trial." On cross-examination, Cornwell agreed that "no two criminal attorneys will try a case the same" but he clarified he would have recommended against waiving a jury trial if a client wanted to do so in this situation. Cornwell definitively concluded that "no one is going to convince me that there was a good reason to have a bench trial."

Cornwell presented expert opinion evidence supporting James' position that his trial counsel acted below an objective standard of reasonableness when they recommended that he waive his jury trial. But our standard of review does not require us to consider all contrary evidence to find the district court did not err in making its factual findings. Rather, this court reviews the district court's factual findings for substantial competent evidence. *Balbirnie*, 311 Kan. at 897-98. Here, the record shows Benedict's testimony regarding counsel's trial strategy provided the substantial competent evidence necessary to support the district court's finding that James' trial counsel made a tactical decision when they advised him to waive his jury trial.

De novo review of the district court's legal conclusions similarly shows the district court did not err in finding James failed to show his counsel's performance was deficient despite Cornwell's differing opinion. The district court relied on *Flynn v. State*, 281 Kan. 1154, 1165, 136 P.3d 909 (2006), and *State v. Griffin*, 279 Kan. 634, 649, 112 P.3d 862 (2005), as its authority for finding the strategic decisions by James' trial counsel did not result in deficient performance. In *Flynn*, our Supreme Court relied on *Griffin* to find that "[e]ven though experienced attorneys might disagree on the best tactics or strategy, deliberate decisions based on strategy may not establish ineffective assistance of counsel." *Flynn*, 281 Kan. at 1165. The district court opined that "[t]he strategic choices in this case mirror strategic choices in *Griffin* and *Flynn*."

We agree. Ultimately here, even if Cornwell and James' current counsel may have tried the case differently, Benedict testified to trial counsel's thoughtful decision, and the district court's decision came down to weighing competing strategies by attorneys.

James' argument regarding his trial counsel's advice to waive a jury trial also fails on *Strickland*'s second prong—prejudice. Under this prong, James appears to argue we should assume prejudice, or structural error, based on the circumstances of this case— where the trial to the court occurred before the same judge who decided his habeas motion. Although he does not explicitly state this, the content of his argument says as much:

> "[I]n the habeas context, the . . . detached finder of fact (district court) would have to go back to the original evidence to make this determination, but this would be an impossible task, since Judge Griffin [who decided the habeas motion] was also the trier of fact in the criminal case, and weighed those facts in favor of the State. The only way to determine this question would be for a different court to reweigh the evidence for purposes of the habeas decision. Unfortunately, the circumstances of this case are so unusual, there is no statutory or judicially created process set forth for such a situation."

15

But as he suggests, there is no authority either supporting or contrary to his narrow argument. In *Mundy v. State*, 307 Kan. 280, 299, 408 P.3d 965 (2018), our Supreme Court held a K.S.A. 60-1507 movant "must show actual prejudice and cannot rely on a claim of structural error" when challenging the effectiveness of *habeas* counsel's representation. But whether prejudice could be presumed in K.S.A. 60-1507 claims alleging ineffective assistance of *trial* counsel is less clear.

In *State v. Calderon*, 270 Kan. 241, 253, 13 P.3d 871 (2000), the Kansas Supreme Court seemed to provide a gateway to presumed prejudice in K.S.A. 60-1507 motions when finding the district court violated the defendant's due process right to be meaningfully present when it instructed the defendant's interpreter not to interpret while counsel made their arguments to the jury. Notably, the *Calderon* court found the error was structural because the error "implicates the basic consideration of fairness." 270 Kan. at 253. And "[u]nder these circumstances, this court is not permitted to determine that it was harmless beyond a reasonable doubt even though the error might have had little, if any, likelihood of having changed the result of the trial." 270 Kan. at 253.

Later, though, the Supreme Court in *Khalil-Alsalaami* distinguished *Calderon* and refused to find structural error in a K.S.A. 60-1507 ineffectiveness claim because the movant "meaningfully participated in his own defense without using an interpreter." *Khalil-Alsalaami*, 313 Kan. at 493; see also *State v. Engelhardt*, 280 Kan. 113, 124, 119 P.3d 1148 (2005) (application of structural error in *Calderon* "limited . . . to its unique facts" and cases after *Calderon* have recognized error implicating right to be present does not automatically merit reversal). So, while *Calderon* provided an avenue for presumed prejudice in K.S.A. 60-1507 motions under *Strickland*'s second prong, *Khalil-Alsalaami* later required reviewing courts "look to the circumstances of each case to determine whether counsel's deficient performance in connection with the interpreter statute rendered the proceedings fundamentally unfair or otherwise affected the outcome of the verdict." 313 Kan. at 496-97.

Procedurally, James appears to be raising his presumptive prejudice argument for the first time on appeal. He did not make this argument in his post-hearing briefing, nor did he make the argument in his K.S.A. 60-1507 motions. James' failure to raise the presumption of prejudice argument, or an argument framed as structural error, at the district court is fatal to this argument on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (refusing to consider constitutional grounds for reversal asserted for the first time on appeal). Because James did not present any argument related to the prejudice prong of *Strickland*, the district court did not have an opportunity to consider whether prejudice should be presumed based on his allegations of deficient performance. And as a result, we will not consider a presumption of prejudice under these circumstances.

And, while James may have presented some evidence to support his claim that trial counsel's performance was deficient, he provided no factual basis to support a claim that the outcome of his trial would have been different if the case had been tried to a jury instead of a judge. In fact, he never even stated that the outcome of his trial would have been different if presented to a jury. He simply argued "a jury might well have acquitted him."

In fact, James' K.S.A. 60-1507 filings are silent as to any prejudice he suffered as a result of his defense counsel's performance, aside from his contention that a jury "might have" acquitted him. His failure to make a supported prejudice argument is reflected in the district court's order denying his habeas claim. The court found James did not sufficiently show that "there was a reasonable probability that a trial to a jury would have resulted in a different verdict[.]"The district court noted "[w]hile current counsel maintains that the evidence presented was slim and subject to contrary arguments, in actuality the trial largely came down to the believability of the child victim."

17

As legal support, the district court relied on a recent case by this court, *Hutcherson v. State*, No. 121,137, 2020 WL 1223404 (Kan. App. 2020) (unpublished opinion). In *Hutcherson*, an inmate filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel because "he failed to sufficiently confer or consult with Hutcherson about the facts of the case, which led to Hutcherson's waiver of his right to a jury and his waiver of 'other fundamental constitutional rights.'" 2020 WL 1223404, at *2. The district court summarily dismissed the claim and this court affirmed on appeal. The panel found that even if they assumed Hutcherson's defense counsel provided deficient representation on this ground: "Hutcherson has not provided—and the record does not reflect—any probability that the outcome of his trial would have been different if the case had been tried to a jury instead of a judge. He has not provided any factual basis to support his conclusory claims." 2020 WL 1223404, at *3.

Because James failed to make any argument contending the result of his trial would have been different if presented to a jury, or any factual basis for such a claim, we find the district court did not err in finding James did not establish he was prejudiced by his defense counsel's alleged deficient performance.

2. *James Fails to Demonstrate Trial Counsel Did Not Investigate the Facts Underlying the State's Theory of The Case*

In James' 2020 Memorandum, he claims his trial counsel did not canvass his neighbors to investigate the victim's parents' claims. In a single-paragraph argument, he contended that had trial counsel so investigated, "it would have been apparent that the child's parents never left James alone with the child" for the timeframe theorized by the State. The district court did not address this claim on its merits, but found the issue was not contained in the 2022 post-hearing briefing and concluded the claim was abandoned.

When reviewing the record in its entirety, we find no other mention of this claim between counsel's 2020 Memorandum and the district court's decision. The issue was not discussed by either James or Cornwell during their testimony in the evidentiary hearing, so James presented no evidence to support such a claim, even if it were preserved. We then have no trouble concluding that even if the district court had erred by dismissing the claim as procedurally abandoned, any potential error was harmless because the claim is conclusory on its merits.

3. *James' Claim that Trial Counsel was Ineffective for Failing to Retain a Defense Medical Expert is Conclusory*

In both his pro se K.S.A. 60-1507 motion and his 2020 Memorandum, James contends his trial attorneys were deficient for failing to retain a defense medical expert to rebut the testimony of the victim's examining physician who testified at trial. The district court found that James' medical expert claim was abandoned because it was not included in his 2022 post-hearing brief.

We need not determine whether the district court's abandonment finding was in error, because even if the district court erred by dismissing the claim as abandoned, we find any such error harmless because James presented no evidence to support his claim. During the evidentiary hearing, Benedict testified that she and Vleisides consulted both a medical doctor and nurse practitioner "who was more of a specialist in this area" and provided them a DVD and records concerning the victim's medical exam. She testified that both medical professionals "reviewed those documents" and "they said it would be a waste of our money to hire them because they couldn't help us."

Although James' trial counsel briefly testified to this issue, this was the extent of evidence offered related to James' claim—that is, Benedict's opposing testimony stating she did consult medical experts, but the experts advised against their services. No other

evidence or argument was offered. We find, then, that James has not met his burden to provide a factual basis to support his claim of his counsel's alleged deficiency for failure to retain a defense medical expert. Additionally, he claims no prejudice which may have occurred as a result. Finding his claim conclusory, any error in the district court's procedural dismissal of this claim was harmless.

4. *James' Claim that Trial Counsel was Ineffective for Failing to Present Expert Witness Testimony to Rebut the Child Victim's Testimony is Conclusory*

As with his prior claim, in both his original motion and 2020 Memorandum, James argues his trial attorneys were ineffective because they did not retain an expert to rebut the victim's forensic interview. Like his medical expert claim, the district court dismissed it on procedural grounds, finding it was unpreserved in his 2022 post-hearing briefing.

Again, we need not determine whether the district court's procedural finding was erroneous, because this claim of ineffectiveness fails on its merits. On review of the record, we note that the only evidence presented at the evidentiary hearing on this topic was, again, that of Benedict. James' counsel questioned Benedict about obtaining an expert specializing in child sex forensic interviews. Benedict testified she consulted such an expert, sharing with the expert a copy of the forensic interview, and after reviewing it, the expert informed her it would be waste of money to employ the expert "given the age of the child, [and] the nature of the allegation." The expert instead sent an electronic book to counsel that outlined how to go about "tearing apart a child witness, basically, or how to just eliminate their testimony and the questions to ask and the things to do." After this testimony, there was no additional follow-up or argument regarding this topic.

Again, no other evidence—aside from Benedict's testimony demonstrating trial counsel's approach—was offered about this claim. James provides no evidence to overcome the presumption that, under the circumstances, trial counsel's actions amounted

to trial strategy. *Khalil-Alsalaami*, 313 Kan. at 486 (the defendant must overcome the presumption that, under the circumstances, counsel's action "'might be considered sound trial strategy'"). James has not met his burden to provide a factual basis to support his claim of his counsel's alleged deficiency for failure to retain a defense medical expert. And, like his prior claim, he suggests no prejudice which may have occurred as a result. Finding his claim conclusory, any error in the district court's procedural dismissal of this claim was harmless.

### 5. *James' Other Claims Addressed by the District Court Fail on their Merits*

During the evidentiary hearing, and in James' 2022 post-hearing briefing, he raised other issues which were not articulated in his counsel's 2020 Memorandum. After finding James abandoned the arguments not articulated in the 2022 post-hearing brief, the district court addressed those additional claims which were included in counsel's written closing.

### a. *Claim that Trial Counsel Never Intended to Try the Case*

First, the district court addressed James' proposed factual finding that his "[t]rial counsel never intended to try this case to a court or a jury.'" James contended that his trial attorneys intended to only handle his case through the preliminary hearing and then withdraw to seek retention or appointment of more experienced counsel in Wyandotte County. And though Benedict testified as much, she also testified that after trial counsel filed a motion to withdraw, the district court "asked Mr. James what he wanted to do and he indicated he wanted us to stay on the case."

On its review of this claim on its merits, the district court found: "While not disputing the 'fact' that trial counsel may have anticipated only representing [James] in the 'preliminary stages' of the criminal case, no facts or legal support is made for this extremely broad claim of ineffectiveness." The district court went on: "Further, whether

21

counsel felt that their representation would be for a limited time is hardly proof of ineffectiveness in prior or future actions conducted by the attorneys. This ineffectiveness claim based on the initial thoughts of trial counsel is denied as unsupported, as not establishing any legal basis of ineffectiveness."

Frankly, Benedict's testimony parallels James' contention: trial counsel did not, in fact, foresee taking the case through trial. But James fails to argue, much less provide authority for, the idea that this somehow means his trial attorneys were deficient, or that the original intentions of his counsel somehow prejudiced him. In addition to a lack of support from the record, James failed to legally support this point with pertinent authority demonstrating how the initial thoughts of counsel showed their representation was deficient or prejudicial. As a result, the district court did not err in finding James did not show ineffectiveness based on this allegation.

### b. Bad Acts Evidence and "Opening the Door"

Next, the district court addressed James' proposed factual finding, included in his 2022 post-hearing brief, that the trial judge was aware of the existence of James' prior bad acts. The district court found this allegation was conclusory and unsupported by legal or factual citations. The district court found the motion in limine filed during his criminal proceedings "alerted this Court to the possibility that some prior bad act(s) may have existed." But even so, "[w]hether this Court was 'aware of the existence of prior bad acts' on the part of James simply does not rise to any level of ineffectiveness of counsel." Put another way, even assuming this rises to a deficient performance, James made no attempt to argue he was prejudiced by the court's awareness of his prior bad acts.

James' more cogent claim regarding the prior bad acts evidence was that his own defense counsel, Vleisides, was deficient for asking a question of James during his testimony that opened the door to examination of his prior bad acts. In both his original

22

K.S.A. 60-1507 motion and his 2022 post-hearing memorandum, James contends his trial attorneys were ineffective for "'opening the door'" to his prior bad acts. At the evidentiary hearing, Benedict conceded that her co-counsel's line of questioning did open the door for such examination at the evidentiary hearing. And Cornwell testified that opening the door to prior acts in this situation "fell below the standard of what would be expected of a competent criminal defense lawyer in Wyandotte County." Cornwell testified "there's no way to rectify" counsel asking a testifying defendant if they "have done anything like this before knowing that your client had admitted to it."

Despite this supporting evidence showing trial counsel's questioning may have fallen below an objective standard of reasonableness, the district court found there was no legal support for "a direct finding of ineffectiveness" on this claim. The district court reasoned that James provided no legal support for finding ineffectiveness and "[m]erely stating that one or more attorneys felt that a question was not proper does not legally establish ineffectiveness." And James failed to show he was prejudiced by this alleged deficient representation. In his post-hearing briefing, James simply argued that "[w]hile the trial judge may or may not have given much consideration to acts supposedly occurring many years previously, the augment that the admission of that evidence severely prejudice James cannot be avoided, particularly combined with the waiver of jury."

James' argument seems to assume, without support, that his trial counsel's error in opening the door to prior bad acts automatically results in reversible prejudice. But he makes no attempt to explain how the result of his case would have been different but for his counsel's action. In fact, James even seems to admit that, given this was a bench trial, the district court may not have considered the prior bad acts, stating that "the trial judge may or may not have given much consideration to acts supposedly occurring many years previously." Without presentation of argument or any legal authority to support a finding of prejudice, James' claim regarding prior bad acts evidence fails. Thus, the district court

23

did not error when it found James did not show his trial counsel was ineffective for opening the door to prior bad acts testimony.

CONCLUSION

Finding that James fails to meet the two-pronged *Strickland* criteria on each of his claims of his trial counsel's ineffective assistance, we conclude the district court did not err in denying James' K.S.A. 60-1507 motion.

Affirmed.